## No. 71,665.

JAMES CODDING, ET AL. *v.* MRS. EUGENE JACKSON.
(287 P. [2d] 976)

Decided September 19, 1955.

Mr. Henry Cutler, Mr. David Berger, for plaintiffs in error.

Mr. Robert Sunshine, Mr. H. D. Reed, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

This action concerns the title, and the right and interest in and to an automobile sold by defendant in error to an imposter who negotiated a transfer of the title and possession to plaintiff in error and his finance company. Upon refusal to deliver possession to defendant in error upon demand, she, at a time not shown in the record, filed a complaint in replevin. Thereafter on October 1, 1953, an amended complaint was filed. Trial was had to the court November 15, 1954, which entered its findings and judgment to the effect that no title to the automobile nor any right or interest vested in one Moon, the imposter to whom plaintiff delivered the certificate of title in blank, signed and notarized; further that the transaction between Moon and plaintiff in error was in violation of C.R.S. '53, 13-6-8 and 13-6-9, and no right, title and interest in said automobile vested in defendants, now plaintiffs in error, and decreed that the money deposited in court from an agreed sale of the automobile, which was depreciating in value, be delivered to plaintiff, now defendant in error.

Defendants, in support of this writ of error, which they obtained in due time, summarize their contention as follows: That the applicable statutes have been complied with and defendant Codding has acquired a right,

title and interest in the said automobile; that defendant's failure to pay the sales tax on said automobile, and failure to comply at the time of application for new certificate of title and a copy of the chattel mortgage filed with the clerk and recorder of Jefferson county, does not affect the rights of the parties herein, nor does it afford plaintiff an additional remedy to void title; that plaintiff herein is estopped from asserting as against defendant Codding any rights as might have existed against Moon; that the failure to comply with the statutes concerning registration of motor vehicles does not prevent title from vesting in defendant Codding, nor operate to divest defendant of title once having acquired it.

The facts upon which this contention is based, and upon which plaintiff proceeded in prosecution of her replevin suit are: Plaintiff, a resident of Pueblo, owned a 1950 Buick automobile, which she advertised for sale. On a holiday, February 12, she was approached by a man who represented himself to be Harold D. Moon, a prominent businessman of the city. (It was discovered later that he was an imposter and a forger.) He offered to purchase the vehicle for $1350.00, apparently the asking price, and plaintiff, upon the signing and endorsing of her certificate of title in blank, had it notarized and delivered it, together with the possession of the motor vehicle, to Moon, the imposter, and received from him a check, which plaintiff on the day following, discovered was a forgery. She immediately made complaint to the District Attorney, who in turn gave immediate notice of the transaction to the motor vehicle division of the state revenue department, requesting that any transfer of title to the vehicle be rejected.

On February 13, the day following the holiday, Moon, the imposter, approached defendant Codding in Denver, representing that the automobile belonged to his sister and offered it for sale to defendant, and claimed that his sister had signed and notarized the certificate of title in blank for the purpose of sale. Codding accepted the offer

and paid the imposter an unnamed amount of money and received the blank certificate of title and possession of the automobile. Codding had arranged for financing the purchase with the finance company, the other defendant, which on February 18, sent the certificate of title which had been filled in with the name of defendant, and defendant's application for a new certificate of title and chattel mortgage to the clerk and recorder of Jefferson county. Neither the finance company nor defendant Codding paid or tendered the sales tax due on the transaction, and for that reason the application was not forwarded to the motor vehicle division for transfer until some three and one-half months later, when on May 28, 1953, defendant had paid the sales tax. Under the circumstances the motor vehicle division refused to issue a new certificate to defendant. While of no consequence, but interesting, three days prior to defendant's payment of the sales tax, the automobile was located by plaintiff and defendant's refusal to surrender possession to plaintiff followed and this action is the outgrowth of that refusal.

Such transactions as are here involved are provided for and controlled by certain sections of the motor vehicle code, and the provisions of the code provide the sale and exclusive manner in which the legal title, as well as any right, title or interest in a motor vehicle may be transferred, sold or assigned. The effective statutes are as follows:

C.R.S. '53, 13-6-8:

"Except as provided in section 13-6-11, no person shall sell or otherwise transfer a motor vehicle to a purchaser or transferee thereof without delivering to such purchaser or transferee the certificate of title to such vehicle, duly transferred in the manner herein prescribed; and, no purchaser or transferee shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall obtain from the transferor the certificate of title thereto, duly trans-

ferred to him in accordance with the provisions of this Act."

C.R.S. '53, 13-6-9:

"Upon the sale or transfer of a motor vehicle for which a certificate of title has been issued, the person in whose name said certificate of title is registered, if he be other than a dealer as herein defined, shall in his own person, or by his agent or attorney thereunto duly authorized, execute a formal transfer of the vehicle described in the certificate, which transfer shall be subscribed and sworn to before an officer authorized to administer oaths in this state. The purchaser or transferee shall, within ten days thereafter, present such certificate, duly transferred as aforesaid, together with his application for a new certificate of title to the director or one of his authorized agents, accompanied by the fee herein required in section 13-6-36 to be paid for the issuance of a new certificate of title shall be issued and disposition thereof made as required herein."

C.R.S. '53, 138-6-13 (2):

"If the applicant for registration or transfer of title to an automotive vehicle has not paid any tax upon the sale and purchase of such automotive vehicle to a retailer as provided in subsection (1) of this section, then such tax shall be paid by the applicant to the department of revenue, and no transfer of title or registration or license plates shall be issued by the motor vehicle department or county clerk and recorder of any county or the manager of revenue for the city and county of Denver or other official charged with such duty unless and until said applicant shall have presented a proper sales tax receipt from the department of revenue to accompany his application for registration or transfer of title to such automotive vehicle. No exceptions shall be allowed to the administrative requirements of this subsection, and the provisions of this subsection are enacted to increase sales tax collections and the more efficient payment and accounting thereof. * * *."

It is to be observed that under these statutory provisions the transferee must receive from the transferor a duly signed and notarized certificate of title; further that the transferee must within ten days thereafter pay the fee and tax required by law and present the assigned certificate and an application for a new certificate to the director of the licensing department or one of its authorized agents.

 This matter is presented on an agreed statement of facts wherein it is unquestionably established that defendant failed entirely to comply with the above provisions, resulting in a failure to acquire any right, title or interest to the motor vehicle involved; and further the method employed by defendant in "jumping title" contrary to the statutes, leaves him in no position to make claim as an innocent purchaser for value. As is shown by the agreed statement, defendant's negligence in failing to comply with the statutes caused the loss and damage, and he cannot successfully claim that plaintiff is estopped to assert her rights for having put a certificate of title in blank in circulation.

 Our consideration of the statutes quoted leads us to conclude that these provisions are more than merely administrative, they are mandatory. Unless strict compliance with the statute is made no interest or right of any kind can be transferred. There is a separate statute governing transactions by automobile dealers, and these statutes were discussed and interpreted by this Court in the case of *Waterman v. Colorado Lease and Investment Co.*, 130 Colo. 305, 275 P. (2d) 191. While this case is cited by counsel for plaintiff in error with some reliance, it is not applicable to the present factual situation, because in that case automobile dealers were involved, and no question of the so-called practice of "jumping title" was involved. Counsel for plaintiffs in error contend that the title vests immediately upon the assignment of the old certificate, and that all requirements that follow are ministerial. This contention is not sound, because

C.R.S. '53, 13-6-15 empowers the director of the motor vehicle division to refuse to issue a new certificate if he determines that the applicant therefor is not entitled thereto.

Defendant did not obtain from his transferor, the imposter, a duly signed and notarized certificate of title, but did receive a certificate of title in the name of, and from, a remote transferor, and in addition thereto failed to comply with the mandatory provisions requiring payment of the taxes and fees due on the transaction within ten days, and thereby make a bona fide application for a new certificate. The statutes are designed to provide a method whereby the licensing authorities may check and control the chain of title as it passes from one private purchaser to another, to the end that bogus or illegal transactions may more easily be detected. This is obvious from the provision that each purchaser is required to procure a certificate of title in his own name, and perform other conditions within ten days. Plaintiff in error accepted a certificate, signed and endorsed, not from the transferor with whom he dealt, who was an imposter, but signed and endorsed by a remote transferor. This method circumvents the underlying purpose of the statute, because it allows indiscriminate transfers of rights and interest in automobiles by the easy method of blank endorsement. To safeguard the rights and interests of owners against imposters, it is clear the Legislature intended to deprive certificates of title of negotiability in its accepted meaning. It is apparent that the Legislature concluded as a matter of public protection that all the right or interest of any kind in and to an automobile is wrapped up in, and subject to, a strict compliance with the law concerning the certificate of title. This certificate, transferred according to the provision of the law, carried the right and interest in and to the motor vehicle as well as the title — all are fused in the manner provided for the transferring of the certificate.

An endorsement in blank of such certificate

of title gives to the immediate transferee the implied authority to insert his name as the purchaser, and its transferability is limited to the surrender thereof to the proper licensing authority for the purpose of issuing a new certificate to the purchaser. There is no authority, express or implied, to insert the name of subsequent transferees in the chain of title. "Where the certificate of title is assigned in blank, the purchaser has implied authority to fill in his own name, but not the name of a buyer from him, * * *." 60 C.J.S. p. 166, §40. Plaintiff in error failed to make application for a new certificate of title within ten days as required by the statute and failed to pay the sales tax and the fees due within that time. These violations of a mandatory statute prevented him from acquiring any right, title or interest in the motor vehicle involved, and the possession by him thereof was without right and defendant in error, as plaintiff, was clearly entitled to prevail in her replevin suit for possession.

■ Our reading of the record convinces us that plaintiff in error is not an innocent party or purchaser in the transactions; that he brought the loss incurred upon his own head by failing to comply with the mandatory statutes. Unless the purchaser complies with the statute, he cannot be considered a purchaser in good faith. To protect his interest the conditions were simple. All he had to do was to require the imposter secure a new certificate of title in his own name and then transfer it to plaintiff in error, this would have revealed the fraud involved. In failing to do what he should have done, and in failing to comply with the statutes, he is in no position to claim that defendant in error, as plaintiff, is estopped.

For the reasons indicated, the judgment is affirmed.