No. 18,001.

AMARILLO AUTO AUCTION, INC. *v.* R. J. HUTCHINSON.
(310 P. [2d] 715)

Decided May 6, 1957.  Rehearing denied May 20, 1957.

Messrs. Davis & Lutz, for plaintiff in error.

Mr. H. W. Seaman, Mr. Conrad L. Ball, for defendant in error.

*In Department.*

Mr. Justice Day delivered the opinion of the Court.

The parties appear here in the same order they appeared in the trial court and we will so refer to them or by name: Amarillo Auto Auction, Incorporated, the plaintiff, and R. J. Hutchinson, the defendant.

Plaintiff brought a replevin action in the district court of Larimer County to obtain possession of an Oldsmobile to which it claimed ownership and right of possession, alleging that the defendant Hutchinson was wrongfully withholding possession of the motor vehicle, notwithstanding demand therefor.

Trial was to a jury. Both parties moved for a directed verdict, which motions were denied and the jury returned a verdict in favor of the defendant awarding damages. Plaintiff cites as error: 1. That the court should have taken the matter from the jury and decided the case on the law since the facts were not in dispute; 2. That under the undisputed facts ownership of the automobile was shown to be in the plaintiff; that the defendant had no right, title or interest in and to the automobile, and failure to direct a verdict for plaintiff was error.

The facts were that the defendant Hutchinson obtained the 1955 Oldsmobile from the Longmont Auto Auction, Inc., a licensed dealer in Longmont. Approximately six days previously the Longmont dealer had been in Amarillo, Texas, and at an automobile auction

there had been the successful bidder on and obtained possession of the Oldsmobile from Amarillo Auto Auction, Incorporated, the plaintiff herein. In payment therefor the Longmont dealer delivered to plaintiff a draft on the Longmont National Bank of Longmont, Colorado. Amarillo Auction forwarded the draft together with a certificate of origin to the Longmont bank to be delivered to the Longmont dealer on payment of the draft. The draft was dishonored, the papers returned to Amarillo Auction, and although Longmont Auction Company, Inc., did not pay for the car or obtain any title thereto, it sold the car to the defendant.

FIRST QUESTION TO BE DETERMINED.

*Did the court err in submitting the case to a jury under general instructions and under a form of judgment awarding damages to the defendant?*

This question is answered in the affirmative.

■ The action was in replevin and the only issue to be determined was ownership of the automobile and the right of possession thereto. Under the record as made there was no disputed question of fact and no questions for the jury to determine. *Israel v. Day,* 41 Colo. 52, 92 Pac. 698; *Webster v. Rhodes,* 49 Colo. 203, 112 Pac. 324.

SECOND QUESTION TO BE DETERMINED.

*Under the undisputed facts, was the plaintiff entitled to a directed verdict for possession of the property?*

This question is answered in the affirmative.

■ The acquisition of title to a motor vehicle in Colorado is prescribed by statute, C.R.S. '53, 13-6-1, et seq. Article 6 is by enactment of the Legislature to be referred to and known as "The Certificate of Title Act." The defendant upon whom the law imposes the duty of applying for a certificate of title and registration plates for the motor vehicle made no attempt so to do. The defendant did not obtain title of any kind from the dealer. The pertinent statute applicable to the case before us is C.R.S. '53, 13-6-18, "Certificates for Vehicles from Other States." This statute, while relieving the

Colorado dealer of the necessity of obtaining a Colorado certificate of title so long as the vehicle remains in the dealer's possession and his place of business for sale and for no other purposes, provides as follows:

" * * * Upon the purchase by any person from a dealer of any motor vehicle the certificate of title to which was issued in a state other than Colorado, if the purchaser or transferee from such dealer shall *accompany his application* for a Colorado certificate of title to such a vehicle *with an affidavit of the* dealer subscribed and sworn to before an officer authorized to administer oaths, that such dealer has and by the execution of such affidavit does warrant to the purchaser or transferee and all persons claiming or to claim under, by or through the purchaser or transferee named, that at the time of the sale, transfer and delivery thereof by the dealer, the vehicle therein described was free and clear of all liens and mortgages whatsoever, save and except as might therein otherwise appear, that the vehicle therein described is not a stolen vehicle, and *that such dealer had good, sure and perfect title thereto, and full right and authority to sell and transfer the same,* a Colorado certificate of title therefor may issue in the same manner as upon the sale or transfer of a motor vehicle for which a Colorado certificate of title has been issued. Upon the issuance by the director of the certificate of title, he shall dispose of the same as is hereinafter provided. * * * (Emphasis supplied.)

Referring to C.R.S. '53, 13-6-1, et seq., it was said in *Codding v. Jackson,* 132 Colo. 320, 287 P. (2d) 976:

"Our consideration of the statutes quoted leads us to conclude that these provisions are more than merely administrative, *they are mandatory.* Unless strict compliance with the statute is made no interest or any right of any kind can be transferred. * * *

* * *

"It is apparent that the Legislature concluded as a matter of public protection that all the right or interest

of any kind in and to an automobile is wrapped up in, and subject to, a *strict compliance with the law* concerning the certificate of title. * * * " (Emphasis supplied.)

In the instant case, to paraphrase language found in *Codding v. Jackson, supra,* the defendant "brought the loss incurred upon his own head by failing to comply with the mandatory statutes." To protect his interests the conditions were simple. All he had to do was to require the dealer to give him the affidavit as set forth in the statute, stating under oath, among other things, that *"the dealer had good, full and perfect title thereto and full right and authority to sell and transfer the same."* Upon the presentation of such affidavit a Colorado certificate of title could have issued to defendant, and under the law he would have become the owner. Failure of the dealer to give him such affidavit warns him immediately that the dealer does not warrant the title to the car, and if he proceeds to purchase he does so at considerable risk. The plaintiff established its ownership of the automobile, never having surrendered the title papers thereto because the Longmont dealer failed to pay for it. Its title, therefore, was superior to that of defendant, and it was entitled to possession.

The judgment is reversed and the cause remanded to the trial court with instructions to vacate its judgment and to enter judgment in favor of plaintiff for possession of the automobile. The car having been sold on stipulation of the parties to prevent depreciation during the pendency of this action and the money deposited in court, the court shall order the funds in custodia legis to be delivered to plaintiff in lieu of possession.

Mr. Chief Justice Moore, Mr. Justice Knauss and Mr. Justice Frantz concur.