## No. 19,352.

GENERAL CREDIT CORPORATION *v.*
BILL OLSEN'S MOTOR, INC.
(363 P. [2d] 489)

Decided July 10, 1961. Rehearing denied July 24, 1961.

Messrs. HELLERSTEIN & HELLERSTEIN, Mr. F. J. MAN-NING, for plaintiff in error.

Mr. FRANCIS A. BENEDETTI, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

REFERENCE will be made to the parties to this writ of error as they appeared in the trial court where plaintiff in error was plaintiff and defendant in error was defendant.

Plaintiff instituted an action in the District Court of Yuma County to recover possession of a Chevrolet station wagon or in the alternative the value thereof. Defendant answered, alleging that it was the owner of the vehicle and further alleged that it had been induced to deliver the car to American Oil Associates, Inc., as a result of the fraudulent representations of its vice president and general manager; that one Druesdow had obtained the vehicle, plus the certificate of origin pertaining to it, by presenting a check written on a purported bank account in a Texas bank, which account was non-existent. Defendant further alleged that because of the fraud the entire transaction, including the loan made by plaintiff in the amount of $2500.00, was void.

On or about May 2, 1959, defendant sold the Chevrolet station wagon in question to the American Oil Associates, Inc. Possession of the car, plus the certificate of origin and bill of sale, was transferred to American Oil Associates after delivery of a check in the amount of $3,436.39 bearing the signature "Edward Green, Secretary-Treasurer" written on a Texas bank. After obtaining indicia of ownership and the car, Druesdow, as "Vice President

and General Manager," applied to plaintiff for a loan on the automobile in the sum of $2500.00. To evidence the indebtedness of American Oil Associates to plaintiff, Druesdow, as vice president, executed a promissory note and chattel mortgage to plaintiff thereby mortgaging the Chevrolet automobile.

When the check on the Texas bank was not paid, defendant caused the car to be seized by the police in Lincoln, Nebraska, where it had been taken by Druesdow. He delivered the car to his place of business at Wray, Colorado. Defendant learned of the plaintiff's chattel mortgage when the plaintiff demanded possession of the automobile. The instant action was then instituted.

At the trial it appeared that when the loan was made by plaintiff, inquiry was made as to the authority of Druesdow to secure the loan on behalf of Oil Associates. Plaintiff's agents were shown to have telephoned the Oil Associates and to have obtained a statement in writing, signed by three of the original incorporators, stating that Druesdow had such authority. It also appeared that Druesdow was individually indebted to plaintiff in the amount of $500.00, which obligation was discharged from the proceeds of the $2500.00 loan.

Trial was had to the court and judgment entered in favor of defendant in the sum of $2600.00, which sum, by stipulation of the parties, had been deposited in the registry of the court. The judgment ordered this sum returned to defendant.

For reversal, plaintiff argues that the trial court misconceived the law applicable to the facts shown, in that it failed to apply the principle that where a motor vehicle is sold and possession of the vehicle, together with the indicia of ownership is delivered to the purchaser, and the purchaser then transfers title to a third person bona fide purchaser for value, the vendor is thereafter estopped to assert title in himself. On the other hand, defendant's position, which position was adopted by the trial court, is that equitable estoppel is available only to

a good faith purchaser who is required to exercise reasonable diligence for his own protection. It is said that plaintiff did not rely on the indicia of ownership but rather made inquiries as to the authority of Druesdow thus evidencing his lack of good faith, and that a further reason for its not being a good faith purchaser arises from the fact that $500.00 of the loan proceeds was applied to the personal indebtedness of Druesdow.

1. *The first question is whether the voidance of the transaction by defendant upon learning of the non-existence of the bank account would in the present circumstances affect the title of plaintiff.*

 We hold that if the plaintiff purchased in good faith and gave value, he is entitled to prevail over the defendant who set in motion the force which ultimately resulted in plaintiff making the loan. The testimony was clear that had it not been for the possession by American Oil Associates of the vehicle, plus the indicia of ownership, plaintiff would not have made the loan. *Shockley v. Hill*, 91 Colo. 451, 15 P. (2d) 623, is precisely applicable. The Court there, speaking through Mr. Justice Hilliard, held that a subsequent purchaser is protected where he makes the purchase in reliance on possession by the defrauder of the vehicle, plus the indicia of ownership. This case is cited in an annotation on this question reported in 18 A.L.R. (2d) 830. The fact situation of the instant case is set forth in the author's introductory statement of the rule:

"A situation frequently arises where the seller of an automobile, in taking a check in payment, delivers the motor vehicle and certificate of title to the purchaser, and the latter transfers it to an innocent purchaser for value before the dealer learns that the payment check is forged or otherwise bad. In such circumstances a preliminary issue is raised as to whether the original purchaser receives any title at all which he can convey to an innocent purchaser. If it is found that he has received even a voidable title, it is generally held that the inno-

cent purchaser, relying upon the possession of the vehicle and certificate of title, will be protected against the claims of the original seller."

Thus Druesdow had a title which, even though voidable, empowered him to confer title on plaintiff unless the evidence established a lack of good faith on the part of plaintiff which entitled defendant to assert its equitable right to avoid the original fraudulent transaction.

2. *Did plaintiff lose his status as a good faith purchaser by questioning the authority of Druesdow to make the loan?*

 In determining whether plaintiff was a bona fide purchaser, it is to be noted that the test is purchase without notice of the defect in the title of the person from whom he purchased and without notice of the right of the original seller to avoid or rescind the sale. See 46 Am. Jur., *Sales,* Sec. 465, p. 630, and the cases there cited. See also Sec. 24 of the *Uniform Sales Act,* C.R.S. '53, 121-1-24, which provides:

"Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title."

For other authorities treating the question of good faith and what constitutes notice of defective title, see *Teague Ford Sales, Inc. v. Commercial Auto Loan Corp.,* 96 Ga. App. 129, 99 S.E. (2d) 524; *Ross. v. Leuci,* 85 N.Y.S. (2d) 497; 3 *Williston Sales,* Sec. 621, Rev. Ed. (1948); *Pool v. George No. 6,* 30 Tenn. App. 608, 209 S.W. (2d) 55, and *Dudley v. Lovins,* 310 Ky. 491, 220 S.W. (2d) 978.

 In the instant case there was no defect in the indicia of title and plaintiff's inquiry did not go to the sufficiency of the title of Oil Associates, but only to Druesdow's authority to bind the corporation. Thus plaintiff's suspicion or curiosity as to extent of Druesdow's authority from Oil Associates to mortgage this

vehicle has no probative value in determining whether the loan was made in reliance on the sufficiency of Oil Associates' "title."

3. *Did the act of the plaintiff in applying $500.00 of the loan proceeds to discharge of Druesdow's personal debt serve to undermine plaintiff's status as a good faith purchaser?*

Defendant relies on a statement reported in 8 Am. Jur., *Bills and Notes,* Sec. 413 (pp. 151-152), to the effect that one who takes the negotiable instrument of a corporation in payment of the debt of an officer is not a bona fide holder as against the corporation. This is a correct statement of law, but it does not apply to facts like the present ones involving as they do a contest between one who asserts an equitable title as against a third party who purchased for value in the belief that the title was free of an equitable claim such as that asserted by defendant. In a contest between an innocent purchaser and a victimized corporation, this principle would no doubt be effective. If Oil Associates were complaining concerning the application of the $500.00, the plaintiff could not justify it. But this knowledge, like the inquiry concerning authority discussed above, cannot aid defendant here. It did not establish lack of good faith as to sufficiency of title but only served to establish the confidence of plaintiff in Druesdow's authority to deal with the vehicle and perhaps also the proceeds.

The only legal consequence which follows from the giving of the $500.00 personal credit is that the plaintiff is not out of pocket in this amount as a proximate result of the defendant's negligent placing of indicia of ownership in Oil Associates. Plaintiff's loss resulting directly from defendant's conduct is the amount of the loan less the $500.00 applied to Druesdow's personal debt. Cf. *Thomas Auto Sales, Inc. v. Pickle,* Okl. 305 P. (2d) 550. The sum of $500.00 should be deducted from the funds in the registry of the court.

The judgment is reversed and the cause remanded

with directions to enter judgment for plaintiff in accordance with the foregoing.

MR. JUSTICE FRANTZ and MR. JUSTICE DAY concur.