No. 22170.

FINANCE CORPORATION, A WYOMING CORPORATION, AND FINANCE ACCEPTANCE COMPANY, A WYOMING CORPORATION v. WILLIAM G. BAUER AND JEFFERSON J. JOSEPHS, D/B/A INTER-AUTO IMPORTS.
(448 P.2d 791)

Decided December 23, 1968.

HELLERSTEIN & HELLERSTEIN, L. A. HELLERSTEIN, K. L. KLEINSMITH, F. J. MANNING, for plaintiffs in error.

C. J. BERARDINI, R. F. FLADER, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

ALTHOUGH the summons to hear errors in the writ of error here involved conveys the impression that there are two plaintiffs in error, the record reveals that there is only one company which had a change of name from Finance Corporation to Finance Acceptance Company while this litigation was pending. We will refer to the parties as Acceptance Company and Inter-Auto.

For a number of reasons, not important here, this litigation had its inception eight years ago. In 1960 Inter-Auto obtained a quantity of Volkswagens from a Wyoming dealer. Inter-Auto was in the business of buying new and used cars and selling them both at retail and wholesale. Because the statutes do not require a Colorado dealer to obtain a Colorado title to automobiles in its possession, Inter-Auto had as evidence of its ownership of 20 Volkswagens: (a) the possession of the automobiles and (b) Wyoming titles executed by a Wyoming dealer with a blank space provided for filling in the name of the transferee. On February 26, 1960 one Kenneth Chaplin, a retail automobile dealer, doing business as Auto Land, arranged with Inter-Auto to obtain the 20 Volkswagens for a price of $33,600. Chaplin had arranged with Acceptance Company to finance the entire purchase (a floor plan loan) with the automobiles as security. On the date of the purchase and sale transaction between Chaplin and Inter-Auto, Chaplin gave Inter-Auto a check postdated to March 1st, in the amount of $33,600. In exchange Inter-Auto gave Chaplin the only evidence of ownership

extant: (a) possession of the 20 automobiles and (b) the Wyoming certificates of title to each car with the space for the name of the transferee still in blank.

On March 1st Chaplin obtained $31,500 from Acceptance Company. In return, he executed chattel mortgages to the company on the 20 Volkswagens, and delivered with the mortgages the certificates of title. Two days later, on March 3rd, Inter-Auto deposited Chaplin's check for $33,600 in its bank, and on March 9th was advised that the check had been dishonored for insufficient funds. On the same day, March 9th, Acceptance Company, acting on information that Chaplin had allegedly abandoned his dealership and had "skipped town," repossessed the 20 Volkswagens and later sold them to partially recover Chaplin's indebtedness to Acceptance Company.

Action was commenced in the lower court by Inter-Auto against Acceptance Company on a claim of ownership of the 20 Volkswagens and that Acceptance Company had converted them to its own use without title or legal right thereto. The trial court found for Inter-Auto on the claim of conversion. Judgment against Acceptance Company in the amount of $33,600 was entered. Plaintiff in error challenges the correctness of that judgment in this writ of error.

Portions of the Colorado statute upon which solution to this controversy hinges are to be found in the Colorado Certificate of Title Act, C.R.S. 1963, 13-6-1, *et seq.* The pertinent section is 13-6-18 dealing with the acquisition by persons in this state of automobiles registered in other states. The section provides in relevant part as follows:

*"Certificates for vehicles registered in other states. —* (1) Whenever any resident of the state shall acquire the ownership of any motor vehicle, by purchase, gift, or otherwise, for which a certificate of title has been issued under the laws of a state other than the state of Colorado, the person so acquiring such vehicle upon acquiring

the same shall make application to the director or his authorized agent for a certificate of title as in other cases.

(2) If any dealer shall acquire the ownership by any lawful means whatsoever of a motor vehicle the title to which is registered under the laws of and in a state other than the state of Colorado, such dealer shall not be required to procure a Colorado certificate of title therefor so long as such vehicle remains in the dealer's possession and at his place of business for sale and for no other purpose.

(3) Upon the sale by a dealer of any motor vehicle, the certificate of title to which was issued in a state other than Colorado, the dealer shall immediately deliver to the purchaser or transferee the aforesaid certificate of title from a state other than Colorado duly and properly endorsed or assigned to the purchaser or transferee together with an affidavit by the dealer subscribed and sworn to before an officer authorized to administer oaths setting forth therein: That such dealer has, and by the execution of such affidavit, does warrant to the purchaser or transferee and all persons claiming or who shall claim under, by or through the purchaser or transferee named; that at the time of the sale, transfer and delivery thereof by the dealer, the vehicle therein described was free and clear of all liens and mortgages whatsoever, save and except as might therein otherwise appear; that the vehicle therein described is not a stolen vehicle, and that such dealer had good, sure and adequate title thereto, and full right and authority to sell and transfer the same.
* * *"

It is Inter-Auto's contention that under subsection 3 above it was necessary for it (Inter-Auto) to endorse and assign to Chaplin as the purchaser or transferee the Wyoming titles with Chaplin or his business name — Auto Land — inserted in the blank space as the purchaser or transferee; and that in addition the affidavits by

Inter-Auto should have accompanied the certificates of title. Because this section was not complied with, argues Inter-Auto, Chaplin received no title and could not, therefore, transfer any interest in the automobiles by mortgage or otherwise to Acceptance Company. We do not so read section 13-6-18.

The portion of the section applying to this transaction is subparagraph 2. Under this subparagraph, Chaplin as a dealer had acquired ownership of the Volkswagens by lawful means. As a dealer he was required to have only the certificates of title from a state other than Colorado (Wyoming in this instance) and possession of the vehicles in his place of business for sale. These indicia of ownership are exactly what Chaplin had when he approached Acceptance Company to secure the loan. In these circumstances Acceptance Company could rightfully assume that Chaplin owned the automobiles. In giving to Chaplin these indicia of ownership — title and possession — Inter-Auto had parted with the only evidence of ownership which it had or could have had. If the Wyoming titles and possession were all that Inter-Auto needed to prove ownership, Chaplin as a dealer needed nothing more or different. Thus as of the date of the suit, having transferred all that it had, Inter-Auto had no title or ownership in the cars on which to predicate its claim for conversion. Inter-Auto put Chaplin in the position where he could lawfully finance and mortgage the autos. It, in fact, actually intended to do so by parting with possession of autos and certificates of title and taking a postdated check. As between the two innocent victims of Chaplin's defalcation, Inter-Auto should be the one to suffer the unfavorable consequences. *See General Credit Corp. v. Bill Olsen's Motor, Inc.,* 147 Colo. 227, 363 P.2d 489; *Shockley v. Hill,* 91 Colo. 451, 15 P.2d 623; *Dissault v. Evans,* 74 Idaho 295, 261 P.2d 822; *Commercial Finance Corp. v. Burke,* 173 Ore. 341, 145 P.2d 473; 7 Am. Jur. 2d

*Automobiles and Highway Traffic* §§ 37, 38; 27 Am. Jur. 2d *Equity* § 147.

■■ In attempting to support the judgment of the trial court, Inter-Auto has cited as authority *Amarillo Auto Auction, Inc. v. Hutchinson,* 135 Colo. 320, 310 P.2d 715; and *Codding v. Jackson,* 132 Colo. 320, 287 P.2d 976, wherein it was held by this court that the provisions of C.R.S. 1963, 13-6-18, are mandatory and must be strictly complied with. The cases cited do not involve inter-dealer transfers, and nothing therein can be construed to hold that subparagraph 3 of section 13-6-18 is applicable to the sale from Inter-Auto to Chaplin. In both the *Codding* and *Amarillo* cases this court held against the ultimate purchaser on the ground that he had failed to comply with the provisions of the statute. However, in the instant case Acceptance Company was not a purchaser or transferee as defined in 13-6-18, subparagraph 3, but was rather only a mortgagee. The two cases cited are not applicable to mortgagees, and, furthermore, the statute does not require Colorado certificates of title to issue to mortgagee on floor plan loans.

The judgment is reversed and the cause remanded to the trial court with directions to vacate the judgment and to dismiss the complaint.

Mr. Chief Justice Moore, Mr. Justice Pringle and Mr. Justice Kelley concur.