472 P.2d 761 (1970)
DOENGES-GLASS, INC., a Colorado Corporation, Plaintiff in Error,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, a Corporation, Defendant in Error.
No. 70-236. (Supreme Court No. 23473.)
Colorado Court of Appeals, Div. II.
May 26, 1970.
Rehearing Denied June 18, 1970.
Certiorari Granted August 20, 1970.
Henry, Cockrell, Quinn & Creighton, Victor Quinn and Peter J. Wiebe, Jr., Denver, for plaintiff in error.
Robert D. Charlton, Denver, for defendant in error.
Before COYTE, DUFFORD and PIERCE, JJ.
Selected for Official Publication.
COYTE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and *762 subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
The parties are before this court in reverse order from their appearance at trial, but for the sake of convenience shall be referred to as they appeared at trial or by name.
In May, 1966 one Vincent Taibi (not a party to this suit) purchased an automobile in New York for a total time sales price of $3,644.42, of which there was a deferred balance of $2,805.48 to be paid off in 36 monthly installments of $77.93 each. The same day Taibi executed a retail installment contract, which was subsequently assigned to plaintiff, GMAC. Three days later, a financing statement was filed in the office of the County Clerk, Suffolk County, New York, as is required by New York law in order to perfect a security interest in a motor vehicle.
After having made six payments to GMAC, Taibi brought the automobile to Denver in November, 1966. Two weeks later the automobile was sold to Doenges-Glass in return for $1,050.00 in cash and another automobile valued at $700.00. In making the sale, Taibi assigned to defendant the certificate of registration (which bore no notation of any outstanding lien), and executed a bill of sale warranting that no liens were outstanding on the vehicle. A few days later the vehicle was sold to a third party for $2,050.00 in cash.
After Taibi became in default, GMAC traced the automobile to Doenges-Glass and demanded payment of the outstanding balance due on the automobile, which was $2,337.90. After Doenges-Glass refused plaintiff sued for conversion. The trial court found no material issues of fact to be in dispute, and accordingly, entered a summary judgment of $2,050.00 in plaintiff's favor.
The appeal brought by defendant presents two basic questions for review. First, was the lien held by GMAC enforceable against Doenges-Glass? Second, if the first question is answered in the affirmative, did the trial court err in its assessment of damages?
Turning to the first question, we find that the trial court was correct in enforcing the lien held by GMAC against Doenges-Glass.
In Mosko v. Matthews, 87 Colo. 55, 284 P. 1021, the court held that the rule of comity requires that a foreign lien on a motor vehicle is enforceable in the State of Colorado provided it is valid in the state where it is executed. Defendant argues, however, that C.R.S. 1963, 13-6-32 enacted subsequent to Mosko is now controlling and provides a defense against foreign liens. C.R.S. 1963, 13-6-32 provides in part:
"* * * No mortgage, as defined in section 13-6-2, on a motor vehicle, filed for record in any state other than the State of Colorado shall be valid and enforceable against the rights of subsequent purchasers for value, * * *." (Emphasis supplied.)
C.R.S. 1963, 13-6-32 then provides that if the certificate of title, whether foreign or domestic, states on its face that a lien is outstanding, it shall be enforced in Colorado.
Based upon this statute, defendant argues that as the certificate assigned to him by Taibi bore no notice of the outstanding lien held by GMAC, it is therefore unenforceable in this state. Such a defense to the enforceability of this lien is applicable only if Doenges-Glass, as a subsequent purchaser, acquired superior rights to the motor vehicle in question, and the acquisition of such rights is dependent upon compliance with C.R.S. 1963, 13-6-8, which provides in part:
"* * * [N]o person shall sell or otherwise transfer a motor vehicle to a purchaser or transferee thereof without delivering to such purchaser or transferee the certificate of title to such vehicle, * * * and, no purchaser or transferee shall acquire any right, title or interest in and to a motor vehicle purchased by him unless and until he shall *763 obtain from the transferor the certificate of title thereto, duly transferred to him in accordance with the provisions of this article." (Emphasis supplied.)
The certificate transferred to Doenges-Glass by Taibi as evidence of his ownership of the car was not a certificate of title but a registration certificate.
Among the various states there are two principal means by which evidence of ownership and liens thereon are established. Rather than issue certificates of title for automobiles, certain states, such as New York, merely issue registration certificates. This type of evidence of ownership requires that a check be made in the proper county to determine the existence of liens. In order to be enforceable against subsequent purchasers in New York, outstanding liens on motor vehicles must be recorded in the registry of the county clerk's office where the debtor resides. New York Uniform Commercial Code, Sections 9-302(1)(d), 9-401(1)(a). In the other category of states, among which is Colorado, the state issues a certificate of title to the owner of the automobile. In this latter category of states, any outstanding liens must be noted on the certificate of title in order to be enforceable against a subsequent purchaser of the vehicle.
Although defendant recognizes that New York does not issue certificates of title, he argues that in essence the certificate of registration is the same as a certificate of title. This is not true. New York authority recognizes that a distinction exists between the two types of certificates. Paglia v. State, 278 App.Div. 281, 105 N.Y.S.2d 597. The certificate transferred to Doenges-Glass clearly stated on its face that it was a registration certificate, not a certificate of title, and accordingly a purchaser in order to protect himself would have to have a lien search made in the proper county of New York State, or require that a Colorado title be issued. Neither of these two alternatives was done, and thus, Doenges-Glass cannot be said to be an innocent purchaser.
As noted above, C.R.S. 1963, 13-6-32 is available as a defense provided the provisions of C.R.S. 1963, 13-6-8 have been complied with. However, as no certificate of title was transferred to Doenges-Glass in this sale, Doenges-Glass did not comply with the provisions of C.R.S. 1963, 13-6-8 and cannot avail itself of C.R.S. 1963, 13-6-32 as a defense.
Defendant's assertion that the rule of comity is inapplicable to the present case is without merit. The law still favors the rule of comity, and only if a certificate of title is issued and delivered to the buyer will this rule be disregarded. Federico v. Universal C.I.T., 140 Colo. 145, 343 P.2d 830.
Similar reasoning results in our holding that the defense of estoppel raised by Doenges-Glass is inapplicable here. GMAC fully complied with the statutes of New York in order to perfect its security interest in the automobile. Upon default in payments by Taibi, it made timely effort to locate the automobile. Doenges-Glass, on the other hand, took possession of the automobile without fully complying with the applicable statutes governing transfer of automobiles. By failure to comply with the statutory requirements, it by definition failed to acquire any enforceable rights to the motor vehicle, superior to the rights of GMAC. By this failure to comply with C.R.S. 1963, 13-6-8, Doenges-Glass cannot be considered a purchaser in good faith, and purchased at its own risk. Codding v. Jackson, 132 Colo. 320, 287 P.2d 976. We will not prevent GMAC, the innocent party from enforcing its lien against defendant.
The second basic question for review concerns the damages awarded plaintiff. Plaintiff demanded $2,337.90, the amount of the unpaid balance, and was awarded $2,050.00, the amount received by Doenges-Glass in resale. Plaintiff is content with that amount. Defendant, however, claims that even if liable, it is only liable for $1,750.00 (total amount paid Taibi for the automobile), and is therefore, entitled to keep the $300.00 difference between the *764 amount it paid for the car and the amount it sold it for.
In a suit for conversion the proper recovery for damages is the value of the property taken plus interest from the date of the conversion. Gates Factory Store v. Coleman, 142 Colo. 246, 350 P.2d 559. Defendant sold the subject car on the open market for $2,050.00 and this value on a sale fairly and openly made would represent the fair market value. Under these circumstances, we cannot say that the trial court erred in the assessment of damages.
Judgment affirmed.
DUFFORD and PIERCE, JJ., concur.