**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel S. GAHAGAN,**
**Defendant–Appellant.**

No. 88–1881.

United States Court of Appeals,
Sixth Circuit.

Argued April 18, 1989.

Decided Aug. 14, 1989.

Janet L. Parker, Asst. U.S. Atty. (argued), U.S. Attorney's Office, Bay City, Mich., for U.S.

Norman Mueller (argued), Haddon, Morgan and Foreman, Denver, Colo., for Daniel Scott Gahagan.

Before WELLFORD and GUY, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Daniel Gahagan appeals his jury conviction for failing to report his ownership of a 1974 Jaguar in a financial report filed with his probation officer, in violation of 18 U.S.C. § 1001. We determine, however, that there was no evidence from which the jury could find that Gahagan was the owner of the Jaguar and, therefore, there was no evidence from which it could find that he made a false statement or concealed a material fact, as is required for conviction under § 1001. Accordingly, we reverse Gahagan's conviction.

## FACTS

On September 12, 1986, Daniel Gahagan, his brother, Michael, and Susan Soper were arrested on drug charges following a search of the Gahagan's residences in Johannesburg, Michigan. After the arrests, Michael T. Vetter of the DEA Drug Task Force began a forfeiture investigation of Daniel Gahagan's assets. During this investigation, Vetter discovered that a 1974 Jaguar and a 1962 Ford Falcon were registered in Gahagan's name.

On May 21, 1987, Gahagan was indicted on charges of conspiracy to possess with intent to distribute marijuana and hashish. On July 29 and 30, 1987, a suppression hearing was held during which Vetter acknowledged that the government was pursuing forfeiture proceedings against Gahagan's assets. The motion to suppress was denied by the district court. Gahagan and his co-defendants then entered a plea of guilty pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. · The plea agreement gave the district judge the discretion to impose a $20,000 fine in addition to a term of imprisonment.

Dennis Roy, a United States Probation Officer in Bay City, Michigan, was assigned to Gahagan's case. On August 7, 1987, Gahagan completed, signed, and filed a financial report with Roy listing his assets. Roy then discussed each entry with Gahagan. Gahagan did not disclose ownership of the 1974 Jaguar in the financial report or in his discussion with Roy. Gahagan did, however, report his ownership of the 1962 Ford Falcon, his interest in real estate in Otsego County, Michigan, and the fact that he owed his defense attorney $7000.

At Gahagan's sentencing proceedings, his attorney stressed Gahagan's financial condition as reported in the financial statement filed with Roy. The district judge sentenced Gahagan to a two-year prison term followed by a two-year special parole term.[1] The judge declined to impose a fine against Gahagan, however, noting his apparent lack of substantial assets.

On February 23, 1988, Gahagan was indicted on the present charge of concealing his ownership of the 1974 Jaguar from his probation officer in violation of 18 U.S.C. § 1001. Following a jury trial, Gahagan was convicted and sentenced to one year without parole, to be served consecutively with his two-year sentence on the drug charges. Gahagan was also fined $2500.

Gahagan now appeals his § 1001 conviction contending that he cannot be guilty of concealing his ownership of the Jaguar or falsely representing his assets since he transferred title to the automobile to his girl friend, Rosemary Tongish, on July 10, 1987, prior to his completion of the financial report and his discussion with Roy.[2]

## ANALYSIS

Gahagan appeals his jury conviction for concealing ownership of a 1974 Jaguar and falsely representing his assets in a financial report filed with his probation officer, in violation of 18 U.S.C. § 1001. That section provides:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The indictment under which Gahagan was charged stated:

> On or about August 6, 1987, in the Eastern District of Michigan, Northern Division, DANIEL GAHAGAN, defen-

---

1. The district court's entry of judgment against Gahagan was subsequently affirmed by this court in *United States v. Gahagan,* 865 F.2d 1490 (6th Cir.1989).

2. Gahagan also argues on appeal that the district court committed reversible error by permitting the government to introduce evidence of extrinsic acts which resulted in prejudice to Gahagan in violation of Rules 403 and 404(b) of the Federal Rules of Evidence. It is unnecessary for us to address this contention since reversal of Gahagan's conviction is warranted on another ground.

dant herein, in a matter within the jurisdiction of the United States Probation Office, an agency of the United States, did knowingly and willfully conceal and cover up by trick, scheme and device a material fact, and make a false, fictitious and fraudulent statement and representation, and make and use a false writing and document, knowing the same to contain a false, fictitious and fraudulent statement and entry, in that DANIEL GAHAGAN submitted a financial report to his probation officer in which DANIEL GAHAGAN failed to report that he owned a 1974 Jaguar, four door, VIN UE2T52476BW, and that he had an asset in the form of the proceeds of the sale of the above described vehicle, in violation of Title 18, United States Code, section 1001.[3]

Gahagan contends that he was not the owner of the Jaguar, having transferred it to his girl friend, Rosemary Tongish, prior to filing the financial report with his probation officer. He asserts that, therefore, he did not violate 18 U.S.C. § 1001 by failing to report that which he did not own.

A violation of § 1001 can occur in one of two ways: first, knowing and willful concealment "by any trick, scheme, or device" of a material fact; second, the making of a false statement or representation. *United States v. Diogo*, 320 F.2d 898, 902 (2d Cir. 1963). The second method of violation requires: "(1) the making of a statement; (2) the falsity of such statement; (3) knowledge of the falsity of the statement; (4) relevance of such statement to the functioning of a federal department or agency; (5) that the false statement was material." *United States v. Aarons*, 718 F.2d 188, 190 (6th Cir.1983).

The jury in this case was instructed on both means of violating § 1001. The question to be resolved by this court is the same for both methods of violation. With regard to concealment, we must determine whether Gahagan's ownership of the Jaguar was a "fact" the concealment of which was sufficient to sustain his conviction. Concerning the false statement, we must determine whether Gahagan's implied representation in the financial report that he did not own the Jaguar was a false representation. Thus, both methods of violation require a determination of whether Gahagan owned the Jaguar at the time he completed the financial report and discussed his assets with his probation officer.

To resolve the question of whether Gahagan in fact "owned" the Jaguar, it is necessary to consider the law of automobile ownership in Colorado, where Gahagan and Tongish resided and where the Jaguar was registered at the time Gahagan filed the financial report. Colorado Revised Statutes § 42–6–102(9) defines an "owner" of an automobile as "any person, association of persons, firm, or corporation in whose name the title to a motor vehicle is registered." Section 42–6–107 provides, in part, that "[t]he certificate of title shall be prima facie evidence of all of the matters therein contained and that the person in whose name said certificate is registered is the lawful owner of the vehicle therein described." Section 42–6–108 declares that "no purchaser or transferee shall acquire any right, title, or interest in and to a motor vehicle purchased by him unless and until he obtains from the transferor the certificate of title thereto, duly transferred to him in accordance with the provisions of this part 1." [4]

---

**3.** It should be noted that, in charging that on August 6, 1987, Gahagan falsely concealed his ownership of the Jaguar and falsely concealed his "asset in the form of the proceeds of the sale" of the Jaguar, the indictment is inconsistent. On the one hand, it alleges that Gahagan owned the Jaguar and, at the same time, alleges that he had sold it and possessed the proceeds from the sale. In any event, it is without dispute that Gahagan did not, on August 6, 1987, have the proceeds from the sale. It is not contended that Tongish paid Gahagan for the Jaguar. Moreover, the government does not contest that Tongish sold the automobile in November of 1987 for $4500 and deposited that amount in her bank account.

**4.** Colorado Revised Statutes § 42–6–109, which enumerates the procedures for transfer of title, provides:

(1) Upon the sale or transfer of a motor vehicle for which a certificate of title has been issued, the person in whose name said certificate of title is registered, if he is other than a dealer, shall, in his own person or by his agent or attorney thereunto duly authorized, execute a formal transfer of the vehicle described in the certificate, which transfer shall

In this case, title was held by Tongish at the time Gahagan was alleged to have concealed his ownership of the automobile. The government asserts, however, that the transfer of title to Tongish was a sham and did not effect a transfer of ownership rights in the automobile.[5] Nevertheless, under Colorado law, all of the procedures necessary for the transfer of ownership from Gahagan to Tongish were satisfied before the financial statement was completed,[6] making Tongish, and not Gahagan, the owner of the Jaguar at that time. Therefore, Gahagan could not be guilty of either concealing his ownership rights in the Jaguar or of falsely reporting that his assets did not include the automobile.

This determination is similar to the Eighth Circuit's reversal of a § 1001 false statement conviction in *United States v. Vesaas*, 586 F.2d 101 (8th Cir.1978). In that case, Vesaas was convicted in district court under § 1001 for falsely reporting that he had no knowledge of property owned by his deceased mother and himself in joint tenancy. The Eighth Circuit held that Vesaas' denial of such ownership "cannot constitute a false statement since it is legally impossible to be a joint tenant with a decedent." *Id.* at 103.

> [A] prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response *may* be literally and factually correct.... An indictment premised on a statement which on its face is not false cannot survive.

*Id.* at 104. Here, the concealment charged in the indictment does not constitute concealment for purposes of 18 U.S.C. § 1001 since the material fact Gahagan allegedly concealed was not a fact. Furthermore, Gahagan's representation that his assets did not include the Jaguar was on its face not a false representation.

Similarly, the Second Circuit in *United States v. Diogo*, 320 F.2d 898 (1963), reversed the § 1001 false statement convictions of the defendant-aliens who had represented that they were married to United States citizens in order to gain entry into this country. The marriages were valid under New York law, where the defendants resided, but were not "marriages" within the meaning of the statute which allowed the aliens to enter. The court held that "so long as falsity is an element of a criminal prosecution for false representations with respect to one's marital status, we hold that the validity of the marriage will be material to such a prosecution." *Id.* at 905. Since the government had not proved the invalidity of the marriages under New York law, the court reversed the false statement convictions. "[I]t is incumbent upon the Government to negative any reasonable interpretation that would make the defendant's statement factually correct." *Id.* at 907.

In this case, the validity of Tongish's ownership of the Jaguar, or, conversely, Gahagan's lack of ownership, is material to the false representation charge, since falsity is an element of that charge. Because,

be subscribed and sworn to before an officer authorized to administer oaths in the state. The purchaser or transferee, within forty-five days thereafter, shall present such certificate, duly transferred, together with his application for a new certificate of title to the director or one of his authorized agents, accompanied by the fee required in section 42–6–135 to be paid for the issuance of a new certificate of title; whereupon, a new certificate of title shall be issued and disposition thereof made as required in this part 1.

Section 42–6–118 directs the application of these procedures to the transfer of vehicles registered in other states. Here, the Jaguar was registered in Michigan prior to its transfer to Tongish in Colorado.

5. We point out that, as noted in footnote 3, this contention is inconsistent with the indictment because it alleges that at the time Gahagan made his statement to the probation officer, he had received the proceeds from the sale of the Jaguar.

6. In compliance with Colorado Revised Statutes § 42–6–109, Tongish presented the transferred certificate of title together with her application for a new certificate to the county motor vehicle registration office and paid the required fee for the issuance of a new certificate of title. Although it is unclear from the record whether Gahagan executed a formal transfer of title sworn and subscribed to before a state officer, as is required by § 42–6–109, it appears that he endorsed his title to the automobile in blank, which gave Tongish the authority to surrender it to the registration office to obtain a new title. *Codding v. Jackson*, 132 Colo. 320, 287 P.2d 976 (1955).

under the procedures required in Colorado, the transfer of title to Tongish was valid, Gahagan did not falsely represent his assets when, relying on the transfer, he failed to acknowledge ownership of the automobile.

The *Diogo* court also addressed the government's argument in that case that the defendants were guilty of concealment in violation of § 1001. The court stated that the defendants did not knowingly and willfully conceal the nature of their marriages if they believed the marriages to be valid. *Id.* at 909. In this case, as in *Diogo*, the government did not prove the intent necessary for a § 1001 violation. Section 1001 requires that a false statement be made with knowledge of the falsity and that the concealment be made knowingly and willfully. To demonstrate that the alleged misrepresentation and concealment were knowingly made, it was necessary for the government to show that Gahagan knew he owned the Jaguar despite the transfer of title to Tongish. The government, however, failed to prove that the transfer of title did not convey ownership to Tongish and, therefore, *a fortiori*, failed to prove that Gahagan had knowledge that he owned the Jaguar and failed to prove that he willfully and knowingly concealed his ownership.

Therefore, not only did the government fail to prove that Gahagan owned the Jaguar but it also failed to demonstrate the intent necessary for a § 1001 conviction.

Like the *Diogo* court, we distinguish *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953). In *Lutwak*, which was not a prosecution under § 1001, the Court held that the defendants had conspired to fraudulently conceal the circumstances surrounding their marriages by asserting to immigration officials the existence of the marriages in order to gain entry into the United States. The proof showed that the defendants went through marriage ceremonies with honorably discharged veterans of World War II in order to gain admission to the United States. The proof also showed that the defendants did not intend to be married to the veterans in the ordinary sense and in fact did not live with them after the marriages. The Court held that under a proper interpretation of the statute (the War Brides Act, 8 U.S.C. § 232), this benefit was to be bestowed only on persons who married veterans in the ordinary sense of marriage, i.e., with the good faith intent to live with them. Therefore, the Court held, the defendants could be found guilty of conspiracy to violate 8 U.S.C. § 180(a), which made it an offense to gain entry to the United States by making a willfully false or misleading representation, and conspiracy to violate 8 U.S.C. § 220(c) by knowingly making a false statement in any document required by the immigration laws. In other words, since the War Brides Act required, for admission to the United States, that the person intend to be married in the ordinary sense, it was fraudulent and misleading, in this context, to represent that there was a marriage.

In the instant case, on the contrary, Gahagan is charged with willfully and knowingly concealing his ownership of the Jaguar and knowingly misrepresenting that he did not own it. Certainly a fair interpretation of the indictment, in charging that Gahagan owned the Jaguar, is that he had title to the automobile. And, as stated, it is "incumbent upon the Government to negative any reasonable interpretation that would make the defendant's statement factually correct." *Diogo*, 320 F.2d at 907. On the contrary, in *Lutwak*, there was a statute (the War Brides Act) that gave meaning to marriage. Here, in this prosecution under § 1001, we have no statutory definition of ownership and the proof did not negative a reasonable belief that the transfer of title conveyed ownership to Tongish.

## CONCLUSION

In summary, we determine that this conviction must be reversed because there is no evidence from which the jury could within reason find beyond a reasonable doubt that Gahagan owned the Jaguar on August 6, 1987, or that he willfully and knowingly concealed his ownership or knowingly misrepresented that he did not own it at that time.

Accordingly, we REVERSE Gahagan's conviction for violating 18 U.S.C. § 1001.

**WELLFORD, Circuit Judge, concurring.**

Gahagan was not charged with the offense, or the wrongful act, of transferring title to the Jaguar in question for the purpose of defeating the valid claims of the United States as a potential judgment creditor or as a potential fine recipient. He was charged instead with making a false and fraudulent statement through his failure to report that he owned a 1974 Jaguar when it is clear that at the time at issue he no longer owned that vehicle but has transferred its title to his female companion. The alternative charge that he concealed his assets by failing to report "the proceeds of the sale of the above described vehicle" is also not borne out by the uncontested proof. Even if, as the government asserts, the sale or transfer of title was a "sham", because it was without valid consideration, Gahagan did not actually ever receive any "proceeds" therefrom. The supposed consideration was cancellation of indebtedness, and in any event, the friend, Rosemary Tongish, received and appropriated, as far as the record reflects, the money paid for the car.

That Gahagan's role in these transactions is suspicious and even calculated to "do the government in" does not, in my view, justify conviction under 18 U.S.C. § 1001 under the circumstances.

The government may be able to prove some wrongful, or even criminal, conduct in respect to Gahagan's actions. As Judge Guy notes in his dissent, defendant's GAPSFAS statement and mortgage constitute extremely suspect representations; these items, however, were not the object of the § 1001 action. The government is limited to the charge in this case—respecting the automobile,[1] and although the government had the right to inquire into defendant's financial position, I am not satisfied that a § 1001 conviction was established here. I must concur in Judge Brown's decision to reverse the conviction for the reasons stated in his opinion despite my agreement with Judge Guy that Gahagan was untruthful in his statements to the law school and evasive in his dealings with the government.

**RALPH B. GUY, Jr., Circuit Judge, dissenting.**

If, as the majority contends, the issue on appeal turns on whether Gahagan had record title to the Jaguar when he filled out the financial statement for the probation department, then the majority is correct in reversing this conviction. In my opinion, however, the majority views the issue and the applicable statute too narrowly.

The government contends Gahagan failed to list a 1974 Jaguar or the proceeds of sale therefrom as an asset, and that this omission was part of a plan to conceal assets so that the court would not impose a $20,000 fine and forfeiture of assets would not be pursued.[1]

There is no dispute that as of August 7, 1987, when defendant filed his financial statement, he did not have record title to the Jaguar. Gahagan had originally acquired the car in 1981. He was indicted on the drug charge on May 21, 1987, and on July 10, 1987, he transferred title to the car to his girlfriend, Rosemary Tongish. Defendant was sentenced in November 1987 and the Jaguar was sold the same month for $4,500, which sum was deposited in Tongish's bank account. Defendant does not frame the issue on appeal to be that he was charged with conduct that could not constitute a crime. Rather, the issue as he states it concerns whether the evidence was sufficient to convict him of the crime charged.

Defendant's claim as to the sufficiency of the evidence at trial has two components. He first alleges that since he did not own the Jaguar or have an interest in the sale proceeds on the date he filled out his financial statement he had no duty to list the car as an asset. Defendant claims that the car was given to his girlfriend,

---

1. It may have been wiser for the government to charge Gahagan with fraud in respect to his purported real estate and mortgage transactions.

1. The court did not impose a fine and it is not clear from the record if any forfeiture proceedings have been instituted.

with whom he was living, to repay her for a loan of $1,000 she made to him so he could go skiing, and to compensate her for his half of their household expenses which he had not been paying.[2] The government contends that the entire transaction between Gahagan and Tongish was a sham designed to hide or otherwise insulate assets. Defendant then counterargues that his motives in disposing of the car are not an issue and that the only relevant fact is that he did not own the vehicle. I would reject this contention. Whenever one seeking benefits from the government, which benefits depend in whole or part on the applicant's financial condition, intentionally places himself in a position so that his written submission under oath gives a false impression of his true financial position, then he violates the statute. A convicted felon supplying financial information to his probation officer for the presentence report is seeking "benefits" in any number of ways including the two implicated here—fines and forfeiture.[3] The avoidance of a penalty is the functional equivalent of the seeking of a benefit. Under the evidence submitted here, the jury could reasonably have concluded that the transfer of title to the Jaguar was a sham designed to hide assets.

The second component to defendant's sufficiency of the evidence argument is really the same as the second issue he raises on appeal; i.e., the "other acts" evidence should not have been admitted and without such evidence there would not have been enough evidence to sustain a conviction. In order to properly consider this issue, it is first necessary to detail the nature of the "other acts" evidence introduced.

Government exhibit three was a financial aid form (GAPSFAS) that Gahagan filed with the Denver University Law School on February 2, 1987. This form was filed three months prior to defendant's indictment on drug charges, which was also five months after the execution of the search warrant that preceded defendant's indictment. The significance of the form was that defendant indicated he was debt free at that time and did not indicate that he owned any real estate. The "debt free" representation is inconsistent with defendant's contention that he transferred the Jaguar to his girlfriend to pay off antecedent debts. The significance of the real estate omission is that there is no reference to any mortgage indebtedness. By contrast, on the financial report given to the probation officer, Gahagan claimed that one of his real estate holdings was subject to two mortgages, one of which was for $65,000. Under these circumstances I find no Federal Rule of Evidence 404(b) implications. Exhibit three was offered simply to show that at another time and another place defendant had said or done something arguably inconsistent with his representations to the probation officer. Under Federal Rule of Evidence 613(b), such evidence is admissible against a party opponent. Even if a Rule 404(b) analysis is made, the exhibit was properly admitted. If the jury believed that the $65,000 mortgage was a sham, then the fact that Gahagan listed the sham debt on his financial report to the probation office was relevant evidence admissible under Rule 404(b) to show that Gahagan had falsified that financial report with regard to matters other than his interest in the Jaguar. The jury could then in turn properly consider the false statement that one of Gahagan's real estate holdings was subject to a $65,000 mortgage as evidence of Gahagan's intent to conceal his true financial situation as part of his scheme to avoid forfeiture and a fine. Although exhibit three is an out-of-court declaration in writing, there are no hearsay problems because it is offered neither for its truth nor falsity but, rather, its inconsistency.

Exhibit four is a certified copy of an alleged $20,000 mortgage given by defendant to his mother on July 31, 1987, one

---

**2.** Defendant did not testify at trial, therefore his version of what occurred comes from other witnesses who did testify and the opening statement and closing argument of his attorney.

**3.** False statements to a probation officer made in the context of information gathered for a presentence report are within the purview of 18 U.S.C. § 1001. *United States v. Gonzalez–Mares*, 752 F.2d 1485 (9th Cir.), *cert. denied*, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985).

week before he filed his financial statement with the probation officer. It was defendant's contention that the mortgage was given to secure an antecedent debt. However, this contention came only from the lips of defense counsel in his argument to the trial judge and not from any witnesses. The government contended that the mortgage was a sham and, like the car transfer, it was all part of defendant's plan to appear destitute so as to avoid fines or forfeitures. Clearly this is evidence admissible under Rule 404(b) to show a plan. In or of itself it is not the least bit prejudicial to defendant unless the factfinder believes it was a sham. This is exactly the purpose of the government in introducing the exhibit, and is not the kind of prejudice implicated by Federal Rule of Evidence 403. The government spends considerable time arguing why the mortgage should have been viewed as a sham transaction. This is not the issue before us, however. If the mortgage was relevant and otherwise admissible, the weight to be given to it is for the factfinder to decide. The rule of *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), which states that the government must make a threshold showing by a preponderance of the evidence that the defendant committed the prior act, is not implicated. Here, it was the defendant himself who submitted the mortgage. The question is not whether he executed it or not but what significance to attach to this conduct in light of other contemporaneous conduct by the defendant. This is a jury question.

Exhibit five is a copy of an application for financial aid that Gahagan submitted to the Denver University Law School dated February 25, 1988. This was subsequent to his conviction and sentencing on the drug charge and while he was on bail pending appeal.[4] In this application Gahagan claims no equity in his home, no real estate, and no assets beyond $300 in cash. The government argues that in the financial statement that Gahagan submitted to the probation officer he indicated that he had a half ownership interest in one piece of real

estate worth $112,000 and another worth $16,000 for a total of $128,000. If one accepts as true that this property was subject to $85,000 in mortgages, this would still leave Gahagan with $21,500 in equity. From this the government argues that exhibit five shows the continuation of a plan to conceal and lie about assets. The problem is, however, that Gahagan was not charged with a general plan to conceal assets but was charged with making a false statement to a government agency. I would conclude that exhibit five should not have been admitted under Rule 404(b) because its primary purpose was to show the character of the defendant and that in filing the statement with the probation department he acted in conformity therewith. This is exactly what Rule 404(a) prohibits. I would find the error harmless, however, since the central focus of this case was on the only act charged in the indictment which was the statement relative to the Jaguar. Since the defendant did not testify, the only real evidence on this issue came from defendant's girlfriend, Rosemary Tongish. If the jury believed her version of the car transfer, they would have had no choice but to acquit the defendant. There was plenty of room to find her testimony not credible, however, and that is what the jury did. I do not see the "character" evidence resulting from the law school financial aid application playing any significant role in the jury's decision. This is particularly true relative to "character" evidence where the jury knows, as they did here, that the defendant was a convicted felon.[5]

In sum, I would conclude that the defendant's trial was primarily a credibility battle, with the defendant putting his credibility at issue through surrogates whom the jury found not credible.

I would affirm defendant's conviction.

---

**4.** Gahagan's drug conviction was affirmed by this court in *United States v. Gahagan*, 865 F.2d 1490 (6th Cir.1989).

**5.** The jury did not know it was a drug conviction, however.