UNITED STATES of America,
Plaintiff–Appellee,

v.

Romele Lavelle GATEWOOD,
Defendant–Appellant.

No. 97–6023.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1999.

Decided April 2, 1999.

Cam Towers Jones, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

April R. Ferguson (argued and briefed), Office of Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before: MARTIN, Chief Judge; RYAN and GILMAN, Circuit Judges.

GILMAN, Circuit Judge.

Romele Lavelle Gatewood appeals his jury conviction and sentence for making false statements in violation of 18 U.S.C. § 1001. He contends that the indictment failed to state an offense, and that the evidence presented at trial was insufficient to support the verdict. In addition, he challenges the denial of his motion to dismiss for violation of the Speedy Trial Act, 18 U.S.C. § 3161. For the reasons set forth below, we VACATE the conviction and REMAND with instructions for the district court to dismiss the indictment.

## I. BACKGROUND

In September of 1991, Gatewood, the owner and operator of G & L Contractors, submitted the lowest bid for a construction project at the Naval Air Station in Millington, Tennessee. The Navy accepted his bid. Gatewood began working on the project in February of 1992.

He hired Construction Quality Consultants ("Construction Quality") to conduct numerous tests at the job site. After completing its work, Construction Quality sent several invoices to Gatewood, none of which was immediately paid.

In March of 1992, the Navy paid Gatewood his first progress payment in the amount of $7,467.05. Gatewood made a $200 payment to D & D Backhoe ("D & D"), one of his subcontractors, the following month. Also in April, Driveways, Inc. entered into a contract with Gatewood to provide asphalt work for the project. After finishing its work, Driveways sent an invoice for $11,338, which has never been paid. Gatewood contends that the work completed by Driveways was inadequate and would not be paid until the work met with his approval.

On May 5, 1992, Gatewood submitted an invoice to the Navy that included the work completed by Driveways. Gatewood also signed a certificate stating that payments had been made to subcontractors. Gatewood received $11,077.95 from the Navy on May 15.

Because Construction Quality had yet to receive any payments, it refused to release its final report unless Gatewood paid a portion of the bill. In November of 1992, Gatewood paid $500 in order to receive the final report, which was necessary to complete the project. Construction Quality did not receive any further payments from him. Gatewood does not dispute that he still owes money to Construction Quality.

On November 26, 1992, Gatewood submitted his final invoice, the report by Construction Quality, and a certification signed

by him that states in pertinent part as follows:

I hereby certify, to the best of my knowledge and belief, that ... [p]ayments to subcontractors and suppliers have been made from previous payments received under the contract ...

The Navy then accepted the project and sent Gatewood a final check for $4,683.37, making a total payment of $23,228.37.

On October 20, 1993, a federal grand jury indicted Gatewood on two counts of making a false statement to the United States Navy in violation of 18 U.S.C. § 1001. The counts alleged that Gatewood, on two distinct occasions, knowingly and willfully made a false statement "in that he certified that he had made payments to subcontractors and suppliers from previous payments received under a contract with the United States Navy when in truth and in fact as he then well knew he had not made payments to the subcontractors and suppliers from previous payments received...."

Gatewood pled not guilty to both counts. On June 9, 1994, the jury returned a verdict finding Gatewood guilty as to one count and not guilty as to the other. The district court sentenced Gatewood to eight months imprisonment, two years supervised release, and restitution in the amount of $11,338 to Driveways and $1,566.93 to Construction Quality. In May of 1995, Gatewood appealed to this court, which affirmed the judgment of the district court. Upon Gatewood's petition for a writ of certiorari, the Supreme Court granted the petition, vacated the judgment of the Sixth Circuit, and remanded the case for further consideration in light of *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), regarding a jury instruction issue. On January 5, 1996, this court remanded the case to the district court for a new trial.

The grand jury filed a superseding two-count indictment on May 20, 1996. Count 1 alleged that on November 26, 1992, Gatewood knowingly and willfully made a false statement "in that he certified that he had made payments to subcontractors and suppliers from previous payments received under a contract with the United States Navy when in truth and in fact as he then well knew he had not made full payments to the subcontractors and suppliers from previous payments received ...." The substance of this count was altered from the previous indictment by adding the term "full." Count 2 of the superseding indictment alleged that he "did intentionally misapply and knowingly embezzle, steal, obtain by fraud and otherwise without authority convert to his own use property valued at $5,000 or more, owned by and under the care, custody, and control of the United States Navy...." The district court later granted the government's motion to dismiss Count 2 without prejudice.

A number of report dates followed. On two of the report dates, Gatewood requested continuances, which the district court granted. On more than one occasion, the district court explicitly excluded certain periods of time from calculations under the Speedy Trial Act, 18 U.S.C. § 3161. The district court, however, failed to explicitly exclude the period of time from August 31, 1996 through January 7, 1997.

Accordingly, at the January 7, 1997 report date, Gatewood filed a motion to dismiss the indictment for violation of the Speedy Trial Act. The district court denied Gatewood's motion without explanation and proceeded with the jury trial. Gatewood was again found guilty and given the same sentence as before, except that the period of supervised release was set at three years instead of two years.

On appeal, Gatewood contends that (1) the superseding indictment failed to state an offense, (2) the evidence was insufficient to sustain the verdict, and (3) the district court erred in denying his motion to dismiss the indictment for violation of the Speedy Trial Act.

## II. ANALYSIS

### A. Sufficiency of the Indictment

#### 1. Standard of review

We review the sufficiency of an indictment *de novo.* *See United States v. DeZarn,* 157 F.3d 1042, 1046 (6th Cir. 1998). The government argues that Gatewood has waived his right to challenge the sufficiency of the indictment because he did not raise the issue at trial or any other time prior to this appeal. Under Rule 12(b)(2) of the Federal Rules of Criminal Procedure, however, a defendant who contends that the indictment fails to establish jurisdiction or to charge an offense may raise that challenge at any time. *See United States v. Hart,* 640 F.2d 856, 857 (6th Cir.1981). But when an indictment is not challenged until appeal, as in this case, the indictment must be construed liberally in favor of its sufficiency. *See United States v. Gibson,* 513 F.2d 978, 979 (6th Cir.1975). "Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the indictment is challenged only after conviction unless the indictment cannot within reason be construed to charge a crime." *Hart,* 640 F.2d at 857–58.

#### 2. The indictment failed to state an offense

Gatewood argues that the indictment fails to allege an offense under 18 U.S.C. § 1001. Specifically, he claims that the indictment does not include one of the elements of the offense—a false statement. The elements required to establish a violation of 18 U.S.C. § 1001 are as follows:

> (1) the making of a statement; (2) the falsity of such statement; (3) knowledge of the falsity of such statement; (4) relevance of such statement to the functioning of a federal department or agency; and (5) that the false statement was material.

*United States v. Hixon,* 987 F.2d 1261, 1266 (6th Cir.1993) (holding that the defendant's conviction for representing that he was not self-employed must be set aside because in fact he was employed by a corporation that he owned).

At the time of Gatewood's indictment, § 1001 provided in pertinent part as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, [violates this provision].

Count 1 of the indictment reads as follows:

> On or about November 26, 1992, ... Gatewood knowingly and willfully made a false, fictitious and fraudulent statement and representation of a material fact, in that he certified that he had made payments to subcontractors and suppliers from previous payments received under a contract with the United States Navy when in truth and in fact as he then well knew he had not made full payment to the subcontractors and suppliers from previous payments received from the United States Navy ...

Gatewood argues that his certification as set forth in the indictment was "not literally false on its face." This court has stated that

> [A] prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response *may* be literally and factually correct.... An indictment premised on a statement which on its face is not false cannot survive.

*United States v. Gahagan,* 881 F.2d 1380, 1383 (6th Cir.1989) (quoting *United States v. Vesaas,* 586 F.2d 101, 104 (8th Cir.1978)) (bracket, emphasis, and ellipses in original). In *Gahagan,* the defendant's conviction for his denial of ownership of a vehicle was reversed because "on its face [it was]

not a false representation" given that he had transferred title to the vehicle prior to the certification. *See id.*

The indictment in the instant case purports to raise a direct conflict between the certification that Gatewood made and the actual facts. Specifically, the indictment contrasts the contention that Gatewood "certified that he had made payments to subcontractors and suppliers from previous payments received under a contract[,]" with the allegation that he in fact "had not made full payment to the subcontractors and suppliers from previous payments received from the United States Navy." The indictment presents a false dichotomy, because certifying that one has made payments to subcontractors is not inconsistent with having yet to pay the subcontractors in full. The indictment therefore simply does not present a false statement.

 In contrast, a false statement would have been present if the certification had stated that Gatewood had made payment in full to all of the subcontractors when in fact he had not made payment in full to all of them. Accordingly, we conclude that the indictment in the instant case is "premised on a statement which on its face is not false." *See Gahagan,* 881 F.2d at 1383. Because an indictment must include all of the elements of the offense, and because a false statement is an element of 18 U.S.C. § 1001, the indictment is fatally defective. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (stating that an indictment must " 'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.' ") (quoting *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135 (1881)).

Although we are cognizant of the fact that the indictment must be read liberally in this case, we find no way to ignore the term "full" as set forth in the indictment. First, the term "full" is not superfluous to the indictment, given that the lynchpin of the government's case was that Gatewood never made "full" payment to Driveways, Construction Quality, or D & D. Second, given that the evidence at trial showed that Gatewood made partial payments to Construction Quality and D & D, deleting the term "full" would have exposed the government to an insufficiency of the evidence challenge because Gatewood did in fact make "payments to subcontractors."

The government argues that our adoption of Gatewood's interpretation of the indictment "would make it impossible for *any* party to be found guilty of making a fraudulent certification." (emphasis in original). We find this argument unpersuasive. Here, the root of the problem lies in the certification itself, which could have been more artfully drafted. If the Navy had wanted to be sure that all payments then due the subcontractors had been made, it should have drafted the certification to reflect that desire. For example, the certification for subsequent progress payments could have stated the following:

I hereby certify, to the best of my knowledge and belief, that . . . *all* payments *due* to subcontractors and suppliers *at the time of the last payment* received under the contract *have been made* . . .

The inclusion of the italicized language above would have enabled the government to pursue the conviction it sought against Gatewood—a conviction based on falsely certifying that he had made all payments due to the subcontractors and suppliers at the time he had received his last progress payment.

Although we are sympathetic to the government's plight in this case, we echo the Supreme Court's sentiments as expressed in a related context:

It may well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, . . . any special problems arising from the literally true but unresponsive answer are to be remedied through the "ques-

tioner's acuity" and not by a federal perjury prosecution.

*Vesaas,* 586 F.2d at 104 (quoting *Bronston v. United States,* 409 U.S. 352, 362, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973)) (ellipses in original).

For all of the above-stated reasons, we conclude that "the indictment cannot within reason be construed to charge a crime." *Hart,* 640 F.2d at 857–58.

### B. Sufficiency of the Evidence

#### 1. *Standard of review*

■ When reviewing the sufficiency of the evidence in a criminal trial, we determine whether, after viewing "the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

#### 2. *The evidence is insufficient to support the verdict*

■ For the same reasons that we find the indictment fatally defective, we also find the evidence insufficient to support the verdict under 18 U.S.C. § 1001. As stated above in Part II.A.2, the evidence showed that Gatewood made partial payments to Construction Quality and D & D. The government concedes that he made these two partial payments. Gatewood therefore did not falsely certify that he had made payments to subcontractors, because in fact he had. What he had not done was make *full* payments to the subcontractors and suppliers. Gatewood, however, never certified that he had done so.

■ " '[I]t is incumbent upon the Government to negative any reasonable interpretation that would make the defendant's statement factually correct.' " *United States v. Gahagan,* 881 F.2d 1380, 1383 (6th Cir.1989) (quoting *United States v. Diogo,* 320 F.2d 898, 907 (1963)) (bracket

in original). We find that Gatewood presented a reasonable interpretation of the certification that the government has failed to rebut. Because Gatewood made payments to two subcontractors as he certified that he had, we find he is not guilty as a matter of law. The evidence is thus insufficient to support the verdict.

### C. Speedy Trial Act

Finally, Gatewood raises a serious challenge to the district court's cursory denial of his motion to dismiss for violation of the Speedy Trial Act. Because we find the indictment fatally deficient and the evidence insufficient to support the verdict, we have no need to address this issue.

## III. CONCLUSION

For all of the reasons stated above, we VACATE the conviction and REMAND with directions for the district court to dismiss the indictment for failure to state an offense.