**UNITED STATES of America,**
**Plaintiff,**

v.

**UNITED TECHNOLOGIES**
**CORPORATION,**
**Defendant.**

**No. C–3–99–093.**

United States District Court,
S.D. Ohio,
Western Division.

March 6, 2003.

---

Pamela M. Stanek, Dale Ann Goldberg, United States Attorney's Office—3, Dayton, OH, David Sadoff, U.S. Department of Justice, Michael F. Hertz, Stephen D. Altman, Department of Justice, Washington, DC, for USA, plaintiff.

James H. Greer, Bieser, Greer & Landis—3, David Carr Greer, Bieser, Greer & Landis—3, Dayton, OH, Peter B. Work, David Z. Bodenheimer, Brian C. Elmer, Richard L. Beizer, Crowell & Moring, Washington, DC, for United Technologies, defendant.

## ENTRY AND ORDER DENYING DEFENDANT UNITED TECHNOLOGIES CORPORATION'S MOTION FOR RECONSIDERATION OF ITS SUMMARY JUDGMENT MOTIONS. (DOC. 134).

ROSE, District Judge.

This matter is before the Court for decision on Defendant United Technologies Corporation's Motion for Reconsideration of its Summary Judgment Motions. (Doc. 134). As the instant case involves the Pratt & Whitney division of United Technologies, the Court will refer to the defendant as "United Technologies" and "Pratt" interchangeably. Defendant's motion requests the reconsideration of six motions, the first being one that claimed the logical impossibility of proving the falsity of United Technologies' allegedly fraudulent contract bid. See doc. 56. Another motion which United Technologies requests the Court to reconsider asserted that all of the Government claims are barred by statutes of limitations. See doc. 57. A third requested that the Court dismiss the Government's claims for equitable relief, as the Government has asserted an adequate remedy at law. See doc. 61. A fourth sought dismissal of the Government's claims on progress payments. See doc. 62. A fifth claimed that the Government's allegation that United Technologies' failure to provide true "best estimates" is amorphous, arbitrary, and, therefore, an unenforceable standard. See doc. 63. United Technologies' final motion for summary judgment that it requests this Court to reconsider sought to dismiss the Government's claims of Breach of Contract allegations as to the third count of the Complaint on the theory that there was no contract in existence at the time United Technologies understands the breach is alleged to have occurred. See doc. 64. These motions were earlier denied in an opinion that relied upon the arguments made by counsel at oral argument. Doc. 128.

## I. Falsity (Doc. 56).

The Court will first consider United Technologies' request to reconsider whether the alleged falsity of the assertions in United Technologies' cost and pricing declarations and certification thereof can be resolved in favor of United Technologies on summary judgment. United Technologies asserts the Government is

required to "negative any reasonable interpretation of [Complaint Exhibit 3] that would make it factually correct." Doc. 134 at 8 (quoting *United States v. Gatewood,* 173 F.3d 983, 988 (6th Cir.1999)). Complaint Exhibit 3 had asserted that Pratt had developed its ceiling price decrement factors for its best and final offer "based upon our review of the PCAG recommendations for each supplier and the cognizant buyer's past experience with the individual vendors involved."

In the case Defendants urge upon the Court, *Gatewood,* the defendant was accused of falsely certifying "that he had made payments to subcontractors and suppliers from previous payments received under a contract with the United States Navy[,] when in truth and in fact[,] as he then well knew[,] he had not made full payment to the subcontractors." *Gatewood,* 173 F.3d at 987. The Sixth Circuit reversed the defendant's conviction because the Government conceded that, in fact, Gatewood had made partial, though incomplete, payments to the subcontractors, a factual circumstance that rendered the certified statement true. *Id.* at 988.

Thus, the holding of *Gatewood* is narrower than the excerpt United Technologies quotes and the case is consistent with a case upon which the Government relies. While United Technologies asserts that its certified price estimates cannot be fraudulent because estimates are inherently subjective, "an opinion or estimate carries with it 'an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which would justify it.'" *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 792 (4th Cir.1999) (quoting W. Page Keeton, *et al., Prosser & Keeton on the Law of Torts* § 109, at 706 (5th ed.1984)).

In *Gatewood,* the defendant knew, and the Government conceded that he knew, that some payments had been made. In the instant case, the Government has charged that United Technologies has certified that its estimates were based upon complete and current data and, moreover, were based upon past experience in achieving certain predictions. Unlike the defendant in *Gatewood,* United Technologies has not put forward facts that would support the veracity of its certification, but has simply asserted the metaphysical possibility that United Technologies, or some United Technologies' representative, had estimated the amounts certified. Not only does United Technologies not have the factual foundation underlying the decision in *Gatewood,* it ignores that it has certified a basis for its estimates, namely, its past experience-a basis that the Government asserts was not, in fact, utilized. Therefore, United Technologies' request that the Court reconsider its motion for summary judgment on the falsity allegations (Doc. 56) will be denied.

## II. Best Estimates.

■ Defendant similarly asserts that it is impossible for the Government to prove that Pratt's certified "Best Estimates" were false, given the "vague" and "ambiguous" nature of the terms. This claim has already been considered and rejected by other courts. In *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 792 (4th Cir.1999), the Fourth Circuit held that "an opinion or estimate carries with it 'an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it.'" *Id.* (quoting W. Page Keeton, *et al., Prosser & Keeton on the Law of Torts* § 109, at 706 (5th ed.1984)). The Government in this case asserts both that Pratt knew of no facts to substantiate its "best estimate" and that it actually knew of facts that would preclude such an opinion. Wherefore, United Technologies' request that the Court reconsider

its motion for summary judgment on the Government's "best estimates" claims, doc. 63, will be denied.

## III. Statute of Limitations

Pratt asserts that two statute of limitations provisions totally bar the Government's claims. A proper analysis of the appropriate statute of limitations period demands the development of facts different from those previously rendered.

### A. Factual Background

United Technologies submitted its Best and Final Offer for the fighter engine contract on December 5, 1983. Part of this submission was United Technologies' Best and Final Offer Disclosure Item # 8, which listed "decrement factors" based upon Pratt's Procurement Contract Accounting Group ("PCAG") estimates. These decrement factors were reduced, however, to "reflect[ Pratt's] past experience in not being able to achieve PCAG recommendations at final settlement time."

Shortly after the February, 1984 initial award under the Alternate Fighter Engine Competition procurement, the General Accounting Office ("GAO") was requested to review the source selection procedure used. This GAO review concluded that the Air Force planned and executed the source selection in compliance with its established policies and procedures. Pl. ex. 9 at 00461.

The GAO review was followed by a series of audits carried out by the Department of Defense's Defense Contract Audit Agency in 1989. The Defense Contract Audit Agency uncovered a hand-written 1983 Pratt document that detailed Pratt's percentage of reduction resulting from negotiations of ceiling price purchase orders from its vendors during a 23–month period. Def. Ex. 33 at 2100975. The Defense Contract Audit Agency determined that the 23–month study was a better, and more favorable to the Government, reflection of Pratt's ability to meet Pratt's Procurement Contract Accounting Group-recommended decrements at final settlement time. However, on June 8, 1995, when this matter was reviewed by an Air Force review board, the Air Force decided that the 23–month study was an insufficiently narrow analytical base and therefore would not have affected negotiations of a contract that was to be carried out not over months, but a period of years. The Air Force closed its books on the issue at this point. While at this point the Government may have had reason to suspect the existence of records concerning Pratt's past experience in attaining PCAG-recommended decrements, Pratt allegedly stonewalled the Government's requests for documents to substantiate the claims made in Complaint Exhibit 3.

In 1997, a Department of Justice auditor, Dannie Zacheretti, began investigating the contract. Zacheretti requested and received documents to substantiate not the decrement rate that Pratt utilized in its best and final offer, but documents which would substantiate the PCAG-recommended decrement rates. Among the materials with which Zacheretti was provided was a print-out of computer-based data reflecting Pratt's past experience in achieving PCAG-recommended decrements. Def. ex. 2 at 230–40; Doc. 1, ex 8. Utilizing this data, Zacheretti determined that Pratt's Best and Final Offer was not based upon Pratt's past experience in achieving PCAG-recommended decrements.

On April 27, 1998, the Department of Justice and United Technologies agreed to toll the running of the statute of limitations periods relevant to the ceiling price decrement issue. Doc. 57, ex. 18. On March 3, 1999, the Department of Justice filed the complaint in the instant case. Doc. 1.

## B. Analysis

■ There are two relevant statutes of limitations. The first is from the False Claims Act, 31 U.S.C. § 3730, which provides:

(b) A civil action under 3730 may not be brought—

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances. . . .

31 U.S.C. § 3731(b).

The Government's common law claims are governed by a separate statute of limitations, 28 U.S.C. § 2415(a), the parts of which Defendant asserts are pertinent, provide:

Subject to the provisions of section 2416 of this title, . . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues. . . .

28 U.S.C. § 2415(a). The proviso of 28 U.S.C. § 2416 contains a tolling function:

For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which—

\*　　\*　　\*　　\*　　\*　　\*

(c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances. . . .

28 U.S.C. § 2416(c). Thus, the United States urges the Court that none of the Government's claims are barred if an official of the United States charged with the responsibility to act in the circumstances did not know and could not have been reasonably expected to know the facts material to the rights of action prior to April 3, 1995, that is, the date three years prior to the enactment of the tolling agreement.

■ United Technologies asserts the clock should run from the discovery of the 23–month hand-written report. The 23–month report was unearthed during the 1989 audit, and which was resolved by an Air Force review board on June 8, 1995. The 23–month report made reference to other sources of information that would have revealed Pratt's historical experience in achieving PCAG-recommended decrements. However, the clock does not begin to run on the pertinent statutory limitation merely because the plaintiff had mere suspicions or could conceivably have alleged fraud on the part of the defendant. *United ed States v. Government Development Bank*, 725 F.Supp. 96, 102 (D.P.R.1989).

United Technologies urges the Court to recognize the formulation outlined in *United ed States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C.Cir.1994) as a measure of when the statute of limitations should begin to run. In *Quinn*, the Court of Appeals for the District of Columbia explained the elements necessary to allowing the government to act on its own so as to bar *qui tam* actions. The D.C. Circuit expressed the bar in the mathematical formula $X + Y = Z$, where $Z$ represents the allegation of fraud and $X$ and $Y$ represent its essential elements:

Congress . . . create[d] a standard under which *qui tam* actions are barred only when enough information exists in the public domain to expose the fraudulent transaction (the combination of $X$ and $Y$), or the allegation of fraud ($Z$). When either of these conditions is satisfied, the government itself presumably can bring an action under the FCA and there is no

place in the enforcement scheme for *qui tam* suits.

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn,* 14 F.3d 645, 654, (D.C.Cir.1994).

Assuming that the *qui tam* analysis is pertinent, United Technologies still cannot prevail in its assertion that the Government's claims are barred by the statute of limitations. Z, the allegation of fraud, did not exist until after the statute of limitations was tolled by agreement, since the complaint was filed on March 3, 1999, and the statute was tolled on April 27, 1998. The Government did not possess knowledge of the essential elements of fraud until the summer of 1997.

■ X + Y in the instant case actually represent three elements that compose a claim under § 3729(a). A claim under §§ 3729(a) of the FCA requires (1) that the defendant made, used, or caused to be made or used, a record or statement to get a claim against the United States paid or approved; (2) that the record or statement and the claim were false or fraudulent; and (3) that the defendant knew the record or statement and the claim were false or fraudulent. *United States ex rel. Lamers v. City of Green Bay,* 998 F.Supp. 971, 984–85 (E.D.Wis.1998); *United States v. Sforza,* 2000 WL 1818686, *4 (S.D.N.Y. 2000).

In the instant case, Pratt certified that its cost and pricing data was "accurate, complete and current as of December 5, 1983." Thereafter, Pratt failed to disclose to the Government a basis for the claim that the decrement factors utilized in its Best and Final Offer were based upon its past experience. Arguably, the Government learned that the asserted basis was false when it discovered the 23–month analysis of past experience in achieving PCAG-recommended decrements, but this study was later determined to have been an insufficient basis for redefining decrements for a multi-year contract. The Gov-

ernment did not come into possession of information showing that United Technologies's basis for its best and final offer was false until Zacharetti discovered documentation showing that PCAG's decrements were based on historical experience in achieving PCAG-recommended decrements in 1997. Thus, even under the analytical structure United Technologies endorses, Government's action is not barred.

## IV. Quasi–Contractual Claims

■ Pratt's motion next requests reconsideration of its motion for summary judgment on Government Counts IV and V, which are equitable claims. Pratt asserts that the Government's equitable claims should be dismissed because a plaintiff may not recover on equitable remedies when there is a sufficient remedy at law available. Defendant also points out that under Ohio law, a plaintiff may not pursue both claims in contract and equitable remedies in the same action. Doc. 61 at 7, Doc. 88 at 2–3. However, the instant case is governed by federal common law. *See Boyle v. United Technologies Corp.,* 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); see also Noel Keyes, Government Contracts Under the Federal Acquisition Regulation § 33.22 (2d ed.1996) ("government contacts . . ., with few exceptions, . . . are governed by federal law regardless of the place of execution or the place of performance."). The Government will not be allowed to recover twice, but may defer its election of remedy until trial on the merits. See *United States ex rel. Roby v. Boeing Co.,* 100 F.Supp.2d 619, 635–36 (S.D.Ohio 2000). Pratt's motion for reconsideration of its motion for summary judgment on the Government Counts IV and V, doc. 62, will be denied.

## V. Progress Payments

The Defendant seeks summary judgment on Counts I and II in so far as they rely upon the Government having made

progress payments, which allowed United Technologies to bill the Government for incurred costs up to a certain percentage of the total fixed price. See D.A.R. 7–104.35(a), (b) (1981). Count I of the Complaint alleges that "by virtue of the acts described above, defendant knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval, including progress payment requests (DD Forms 1443) and invoices." Doc. 1 ¶ 52. Count II also recounts progress payments: "By virtue of the acts described above, United Technologies Corporations' Pratt & Whitney division knowingly made, used, or caused to be made or used false records or statements, such as DD Forms 633, Certificates of Current Cost or Pricing Data, and DD Forms 1443 [for progress payments], to get false or fraudulent claims paid or approved." Doc. 1 ¶ 56.

In response to United Technologies' motion for summary judgment, the Government informed the Court that it was no longer seeking civil penalties or damages for the progress payments, and would rely instead on the invoices as a basis for both. See Doc. 79. The Government asserted that this rendered United Technologies motion for summary judgment on the progress payments moot. United Technologies did not reply to the Government response, but has now requested the Court to reconsider its decision to deny United Technologies' motion for summary judgment. Doc. 134 at 6. Still, United Technologies has presented no argument as to why its requested motion for summary judgment is not moot. The Court therefore concludes that the question is moot and denies this portion of United Technologies' motion to reconsider.

## VI. Breach of Contract Claim in Count III

■ United Technologies' Motion for Summary Judgment as to the Government's Breach of Contract Allegations in Count III asserts that United Technologies could not be in breach of contract for failing to provide "accurate, complete and current cost or pricing data during the negotiation of the Contract. . .," because there cannot be any breach of contract for actions taken during the negotiation of a contract, since there is not yet a contract to breach. Doc. 64 at 4–6. The second breach of contract claim in count three asserts that:

> By virtue of the acts described above, United Technologies Corporation breached the terms of the AFE [Alternate Fighter Engine] Contract when its Pratt & Whitney division failed to provide accurate, complete and current cost or pricing data during the negotiation of the Contract, and failed to adjust its AFE Contract prices to reflect the impact and effect on those prices of accurate, complete and current cost or pricing data.

Doc. 1 ¶ 60. Pratt stresses that this alleges misconduct "during negotiations," reasoning that it could not be in breach of contract for actions taken during negotiations. Pratt also focuses on the second part of this allegation, claiming that the contract put no duty on Pratt to " 'adjust its AFE Contract prices to reflect the impact and effect on those prices of accurate, complete and current cost or pricing data.' " Doc. 64 at 6 (quoting Doc. 1 at ¶ 60).

The Government counters that the contract provides for adjustments to price for a contractor's conduct in negotiations by virtue of a clause inserted in the contract to comply with Defense Acquisition Regulation (DAR) 1–704.29, 32 C.F.R. § 7–104, "[i]f the price. . .negotiated in connection with this contract. . .was not complete, accurate, and current as certified in the Contractor's Certificate of Current cost or

Pricing Data...the price...shall be reduced accordingly...." Pratt urges the Court to construe this clause to create a right in the Government to reduce the contract price, and axiomatically, that Pratt cannot be in breach of this clause, since it puts no responsibilities on Pratt. Doc. 64 at 6–7. However, Pratt is alleged to have had a contractual duty to certify its cost and pricing data as complete, accurate, and current. The above-quoted passage provides a contractual remedy for the breach of this contractual duty. If Pratt had a contractual duty to certify these prices as current, breach of this duty would create a cause of action. Therefore, Pratt's request to reconsider its Motion for Summary Judgment as to the Government's Breach of Contract Allegations in Count III, Doc. 64, will be denied.

### Conclusion

For the reasons stated herein, Defendant United Technologies Corporation's Motion for Reconsideration of its Summary Judgment Motions, Doc. 134, is hereby DENIED.