NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0529n.06

Nos. 19-1385/1453

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 10, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| BABUBHAI RATHOD, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: BOGGS, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Babubhai Rathod admitted to violating several conditions of his supervised release and pleaded guilty to new charges of healthcare fraud and aggravated identity theft. The district court sentenced Rathod to 144 months of imprisonment on the new charges and to a consecutive term of 10 months of imprisonment on the supervised-release violations. Rathod challenges both sentences and, for the first time on appeal, argues that there was a jurisdictional defect in the Information. We **AFFIRM**.

**I.**

**A. Factual Background**

Rathod was a physical therapist. In 2002, the State of Michigan charged him and one of his healthcare entities, Emerald Physical Therapy, with eight counts of falsifying medical records, four counts of healthcare fraud, two counts of fraud or larceny over $1,000.00, and one count of conspiracy to commit fraud or larceny for billing Medicare and Medicaid for physical therapy

services that were never provided. Emerald Physical Therapy, acting through Rathod, pleaded guilty in 2003, and Rathod's license was revoked and he was ordered to pay restitution.

In 2011, the federal government discovered that Rathod was participating in a scheme to acquire patient referrals for his healthcare companies by paying kickbacks to healthcare practitioners and disguising those payments as mileage expenses or bonuses. The government charged Rathod with conspiracy to pay and receive healthcare kickbacks, and Rathod pleaded guilty to that charge in 2012. He was sentenced to 48 months in prison to be followed by two years of supervised release. Prior to going into custody, Rathod sold his medical practice to Dr. Richard MacAuley. As a consequence of his conviction and as part of a related civil settlement, Rathod agreed to a 20-year exclusion from participating in federal healthcare programs. The district court also required, as a condition of Rathod's future supervised release, that he refrain from "operating, partnering with, or overseeing any business that billed services to Blue Cross Blue Shield of Michigan ("BCBSM"), Medicaid, or Medicare." R. 55, PID 315. Rathod was released from custody on June 24, 2016.

On December 28, 2017, BCBSM received a complaint on its anti-fraud hotline alleging that Advanced Sleep Diagnostics of Michigan ("ASD") was changing prior-authorization forms so that patients qualified for more expensive in-lab sleep tests, rather than home sleep tests, and that ASD's owner, Jackie Patel, and its billing coordinator, Cathy Younknan, submitted forms with false information, and without physician consent, to get the authorizations approved.

BCBSM's subsequent investigation revealed that Rathod had resumed participating in federal healthcare programs—in violation of his exclusion and the special condition of his supervised release—by concealing his control of several healthcare providers, including Advanced Medical Services, P.L.L.C. (d/b/a/ ASD), Sleep Diagnostics of Michigan, P.C. ("SDM"), EZ Sleep

Supplies, L.L.C. ("EZ Sleep"), and Paramount Home Care, Inc. ("PHC" or "Paramount").

Although these companies were nominally "owned" by Rathod's friend, Jackie Patel, on paper,

Rathod operated them and controlled their accounts and activities. As relevant here, the

investigation also revealed that:

- Rathod directed a convicted felon, Wavy Curtis Shain, to organize AMS to take over Dr. MacAuley's failing company, SDM. Rathod "enrolled AMS in Medicare and Medicaid in the name of another physician colleague, Abid Agha, M.D." R. 55, PID 316. "Dr Agha knew Mr. Rathod enrolled in Medicare and Medicaid using his name." *Id.*

- "Mr. Rathod used the aliases 'Chuck,' 'Chuck Agha,' 'Chuck Patel,' 'Babu Ahir,' and 'Dr. Ahir,' to interact with AMS employees and third-party vendors. Mr. Rathod also assumed Dr. Agha's and Jackie Patel's identities and created e-mail addresses for those identities . . . to conduct business without their knowledge." *Id.*

- From October 2016 to May 2017, Rathod used Dr. Agha's identity, including his name, address, date of birth, Social Security number, and driver's license number, along with yet another false email address to seek financing from thirteen funding sources. Rathod, "as Dr. Agha, signed a loan agreement with Greenbox Capital" and then used a fictitious notary to forge Dr. Agha's name on a Confession of Judgment that rendered Dr. Agha personally liable in the event of a default. *Id.* at PID 317.

- In fall 2016, Jackie Patel and an individual named "Chuck" approached Barry and Lori Gaukel, the owners of EZ Sleep, to negotiate the purchase of the business. Chuck, later identified by the Gaukels in a photo lineup as Rathod, led the negotiation for the purchase of the business. "Rathod directed another individual, Chandu Patel, to organize a holding company, SAM Business Solutions, Inc. with Chandu Patel acting as the registered agent." *Id.* at PID 318. Rathod funded his acquisition of EZ Sleep through purchase agreements in the name of Jackie Patel, acting on behalf of SAM Business Solutions.

- At some point, Rathod "participated in negotiations with his wife, Shaila Rathod, to purchase Paramount Home Care, Inc. in Farmington, Michigan, from its owner." *Id.* at PID 319. Rathod, using the identity of Chandu "Chuck" Patel, "signed a non-disclosure agreement with Vallexa, Inc., a Las Vegas-based home health care and hospice broker, to explore the possibility of buying Affiliated Home Health Care, LLC, in Southfield, Michigan." *Id.* Rathod instructed the real Chandu Patel to create "Fafi Business Solutions, LLC, with Chandu Patel acting as the registered agent" and "knowingly misrepresented to Mr. Patel that Fafi Business Solutions was the holding company for Subway restaurants that Mr. Patel would manage." *Id.* In fact, "Fafi Business Solutions existed solely as the holding company for Paramount Home Care." *Id.* On September 15, 2017, Rathod acquired Paramount Home Care "under a stock purchase agreement . . . that was signed by his wife . . . on behalf of Fafi Business Solutions. [Although] that contract required

3

> Mrs. Rathod to report the change of ownership to the Center for Medicare and Medicaid Services (CMS), she never did." *Id.*

As a result of the investigation, Medicare and Medicaid suspended payments to and revoked the billing privileges of AMS, Sleep Diagnostics, EZ Sleep, and Paramount.

### B. Procedural Background

In May 2018, the U.S. Probation Office filed a revocation petition seeking a warrant for Rathod's arrest on suspicion that he violated several provisions of his supervised release.[1] Rathod and the government agreed to a global resolution whereby Rathod would waive indictment and plead guilty to an Information charging him with healthcare fraud (Count 1) and aggravated identity theft (Count 2), and also admit to the alleged supervised-release violations. In return, the government agreed not to oppose Rathod's request to receive a reduction for acceptance of responsibility, not to prosecute Rathod for any other crimes arising out of his activities with these healthcare agencies, not to prosecute Rathod's wife, and not to oppose Rathod's request for the sentence on the supervised-release violations to run concurrently with the sentence on the new criminal charges. Pursuant to this agreement, Rathod waived indictment and pleaded guilty to the Information.

The U.S. Probation Officer prepared the initial Pre-Sentence Report ("PSR"). The PSR calculated Rathod's offense level as 27, which included a four-level aggravating-role enhancement and a reduction for acceptance of responsibility. Rathod and the government both objected to the

---

[1] The petition was based on Rathod's suspected violation of Special Condition #2, which prohibited him from applying for or entering into any loan or credit transaction without prior approval; Special Condition #3, which required Rathod to maintain legitimate full-time employment as approved by his probation officer (Rathod had reported to his probation officer that Jackie Patel was his supervisor at a business called Elite Global Group. However, investigators observed him working at several of the above-mentioned healthcare providers during working hours); Special Condition #4, which prohibited Rathod from operating or overseeing any business where services are billed to BCBSM, Medicare, or Medicaid; and Standard Condition #9, which prohibited him from associating with a felon.

guideline calculations. Rathod contended that the aggravating-role enhancement was inappropriate. The government contended that an obstruction-of-justice enhancement was warranted because Rathod falsely informed his probation officer that he had no authority to liquidate assets that were not in his name and failed to disclose his involvement with, or control over, other businesses during the presentence investigation. The final PSR applied the aggravating-role enhancement, added an obstruction-of-justice enhancement and, because of that enhancement, removed the three-level reduction for acceptance of responsibility, resulting in a total offense level of 30.

During sentencing, Rathod renewed his objections to the role enhancement and objected to the obstruction enhancement and to the denial of the acceptance-of-responsibility reduction. The district court overruled Rathod's objections. With an offense level of 30 and a criminal-history category of III, Rathod's Guideline range was 121 to 151 months, but the statutory maximum sentence capped the Guideline range at 120 months on Count 1. The aggravated-identity-theft charge carried a mandatory 24-month consecutive sentence. The district court imposed a sentence of 120 months on Count 1 and a consecutive 24-month sentence on Count 2.

The district court took a short recess and re-convened for the sentencing hearing on the supervised-release violations. Rathod admitted that he violated the conditions of his supervised release, and the government, pursuant to its agreement, did not object to Rathod's request for a concurrent sentence on the supervised-release violations. The district court revoked Rathod's supervised release and sentenced him to ten months' imprisonment on the supervised-release violations, to run consecutively to the sentence imposed on the new criminal charges.

On appeal, Rathod contends that the district court erred by imposing an obstruction enhancement, denying him a reduction for acceptance of responsibility, imposing a four-level role

enhancement, and running his revocation sentence consecutive to his sentence on the new criminal charges. Finally, he raises a new argument for the first time on appeal that the criminal information on Count 1 was insufficient, rendering his conviction on that count invalid because the court lacked jurisdiction.

## II.

### A. Jurisdictional Defect in Information

We first consider Rathod's newly raised argument that Count 1 of the Information failed to charge the essential elements of the offense of healthcare fraud. In order to avoid the rule that "[a] voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings," *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001), Rathod contends that the failure to charge that his scheme "affected commerce" was a *jurisdictional* defect that deprived the district court of subject-matter jurisdiction to adjudicate the charge. *United States v. Schaffer*, 586 F.3d 414, 421 (6th Cir. 2009) ("[E]ven if presented for the first time on appeal, claims of jurisdictional defects in the indictment are not waived.").

In order to succeed, however, Rathod must demonstrate that his argument is truly a jurisdictional one, *i.e.*, an argument that "alleges that the face of the defendant's indictment discloses that the count to which he pleaded guilty failed to charge a federal offense, such that the district court lacked the power to entertain the prosecution." *United States v. Bastian*, 770 F.3d 212, 217 (2d Cir. 2014). Although we review such challenges de novo, "where a defendant does not challenge an [information] until appeal, the '[information] must be construed liberally in favor of its sufficiency.'" *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002) (quoting *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999)). "Furthermore, unless the defendant can show prejudice, a conviction will not be reversed where the [information] is challenged only after

conviction unless the [information] cannot within reason be construed to charge a crime." *Id.*
(quoting *Gatewood*, 173 F.3d at 986).

> To obtain a conviction for healthcare fraud under 18 U.S.C. § 1347:
>
> [T]he Government must prove that [the defendant]: "(1) knowingly devised a
> scheme or artifice to defraud a health care benefit program in connection with the
> delivery of or payment for health care benefits, items, or services; (2) executed or
> attempted to execute this scheme or artifice to defraud; and (3) acted with intent to
> defraud."

*United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008) (citation omitted). Count 1 of the
Information charged that Rathod "knowingly and willfully executed a scheme and artifice to
defraud and to obtain money from health care benefit programs, by means of false and fraudulent
pretenses and representations." R. 1, PID 1. Rathod now argues that, because a "health care benefit
program" is defined elsewhere in the criminal code as "any public or private plan or contract,
affecting commerce," 18 U.S.C. § 24(b), the Information was jurisdictionally deficient because the
"affecting commerce" language was not incorporated into the Information and the Information
therefore failed to charge a crime. We disagree.

Because Rathod did not challenge the validity of the charging instrument until this appeal,
we must construe the Information "liberally in favor of its sufficiency." *Davis*, 306 F.3d at 411.
We have held that charging documents that track the statutory language defining the offense
contain the requisite elements of the offense. *See, e.g.*, *United States v. Anderson*, 605 F.3d 404,
411 (6th Cir. 2010) ("Anderson's indictment clearly tracked the language of the statute and thus
contained the elements of the offense."). The government is correct that although 18 U.S.C. §
1347 does not contain the "affecting commerce" language, that language is used in another part of
the code to define a term—"health care benefit program"—that does appear in 18 U.S.C. § 1347.
The Information alleged that Rathod defrauded such "health care benefit programs" and

7

specifically listed Medicare and Medicaid in the accompanying factual description. Therefore, the Information tracked the language that appears in the statute of conviction. The failure to additionally import into the charging instrument part of the definition of a health care benefit program does not make the Information defective or fail to charge a federal crime.[2]

If, however, the omission of the "affecting commerce" language from the Information was erroneous, it did not deprive the district court of jurisdiction. Rathod appears to concede in his reply brief that we have recently rejected this very argument. *See* Reply Br. at 20. In *United States v. Hobbs*, 953 F.3d 853 (6th Cir. 2020), we interpreted a Supreme Court decision, *United States v. Cotton*, 535 U.S. 625 (2002), as confirming our pre-*Cotton* precedent rejecting the argument that "the failure of an indictment to allege an element of an offense charged prevents a district court from having subject-matter jurisdiction." *Id.* at 856 (quoting *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 581 (6th Cir. 2002)). Because Rathod makes only a jurisdictional argument, our decision in *Hobbs* that indictment omissions do not deprive a court of jurisdiction forecloses Rathod's challenge.

### B. Obstruction Enhancement and Denial of an Acceptance-of-Responsibility Reduction

Rathod contends that the district court erred in applying a two-level enhancement for obstruction of justice.

---

[2] To the extent that the failure to include this language was error, we nevertheless find it harmless. Rathod does not contend that Medicare and Medicaid do not qualify as "health care benefit programs" that affect commerce, and he in fact admitted during his change-of-plea hearing that the Information and his plea agreement contained sufficient factual bases to support the healthcare-fraud charge. Therefore, Rathod cannot plausibly claim that he was prejudiced or deprived of notice of the nature of the charge against him, which is the purpose behind the requirement that the charging document recite the essential elements of the crime. *See, e.g.*, *United States v. Lentsch*, 369 F.3d 948, 952 (6th Cir. 2004) (noting that the requirement that a charging instrument contain the elements of the offense is "designed to ensure that defendants have sufficient notice of the charges against them to permit them to prepare a defense").

Under U.S.S.G. § 3C1.1, an enhancement for obstruction of justice is warranted if:

(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

We note at the outset that the appropriate standard of review is not clear. A panel of our court recently explained that, while we review legal conclusions de novo and factual findings for clear error, we have sent mixed messages about how we review "the application of the guidelines to the facts—that is, the decision whether the historical facts rise to the level of obstruction under § 3C1.1." *United States v. Thomas*, 933 F.3d 605, 608 (6th Cir. 2019). Our past cases have sometimes applied clear-error review, de novo review, or a hybrid of the two. *Id.* Not surprisingly, the parties dispute the proper standard: Rathod argues for de novo review and the government contends that, as a fact-intensive inquiry, clear-error review is appropriate. The *Thomas* court did not resolve the question because it determined that, even applying de novo review, the enhancement was proper. *Id.* at 610. We also need not reach the question because we too conclude that, even under de novo review, the obstruction enhancement was warranted.

The district court relied on two separate factual predicates to justify the enhancement: Rathod's allegedly false statement to the probation officer that he did not have the ability to liquidate assets that were not in his name, and Rathod's failure to disclose another entity, New Vision, during the presentence investigation. Either is sufficient to justify the enhancement, and both warrant it.

### 1. False Statement to Probation Officer about Shakti Estate

Rathod argued below that his statement to the probation officer that he could not liquidate assets that were not in his name was not false. He renews that argument on appeal and also argues

that even if false, the statement was not *materially* false, and was more akin to the type of inaccurate or misleading information that is insufficient to justify the enhancement. His arguments are without merit.

First, the government elicited extensive testimony proving that Rathod did have the ability to unilaterally dispose of assets not in his name. The government focused its proof on Shakti Estate, LLC, a company that owned commercial properties and was, like many of Rathod's businesses, registered in his wife's name. The government proved that Rathod had access to the Shakti Estate bank account on his phone, frequently moved Medicare or Medicaid reimbursements into the Shakti Estate's account as "rent" payments, and used the Shakti Estate account to pay for his own personal expenses and, in one instance, to make a tuition payment for his son. Moreover, as Shakti Estate's CEO, Rathod attempted to liquidate Shakti Estate's assets. In 2017, for instance, he contacted an auctioneer in California to inquire about auctioning one of the Estate's commercial buildings in Edmore, Michigan. Even while in jail awaiting resolution of the current charges, Rathod placed an additional call to this same auctioneer seeking to liquidate the property. This evidence proves Rathod's authority to liquidate assets of entities not in his name.

Further, the record belies Rathod's argument that the statement was an innocent omission and supports the district court's conclusion that Rathod "lied to the probation officer about probably a whole lot of things, but particularly his ownership, his control of Shakti Estates [sic] . . . ." R. 106, PID 805-06. Indeed, Rathod made his representation in response to the probation officer's attempts to identify what assets Rathod had that could be liquidated to pay an impending fine and restitution award. Moreover, Rathod's argument that he legitimately believed he had no ability to liquidate assets not in his name is undermined by his history of disposing of assets

10

belonging to several entities involved in this case that were not in his name, including Shakti Estate.

For similar reasons, we conclude that the statement was material. Application Note 6 to U.S.S.G. § 3C1.1 defines a "material" statement as one that, "if believed, would tend to influence or affect the issue under determination." The probation officer's question about Rathod's income and assets sought to determine his financial condition and ability to pay the substantial restitution amount he faced in addition to the potential Guideline fine that could have been—but was not—imposed by the district court. Because of Rathod's statement, none of Shakti Estate's assets were included in the PSR's financial summary. We have upheld obstruction enhancements based on similar omissions. *See, e.g.*, *United States v. Wilson*, 630 F. App'x 422, 430 (6th Cir. 2015) (affirming an obstruction enhancement because the defendants' omission of several assets "alone supports the obstruction of justice enhancement"); *United States v. Schneider*, 72 F. App'x 369, 371 (6th Cir. 2003) (concluding that obstruction enhancement was warranted because the defendant's "failure to accurately disclose his assets interfered with the sentencing court's capacity to gauge his ability to pay restitution"). In short, the materiality of Rathod's false statement to the probation officer was evident.

### 2. Failure to Disclose New Vision

For similar reasons, Rathod's failure to disclose New Vision also justified the enhancement. Rathod contends that his failure to disclose New Vision cannot support an obstruction enhancement because New Vision was also owned by someone else. The evidence showed that while Rathod's wife owned New Vision, Rathod held himself out as New Vision's CEO and exercised control over New Vision's finances. Moreover, Rathod's argument that his failure to disclose New Vision was not material because New Vision had no assets that could be

liquidated to pay a fine or restitution ignores the government's evidence that in April 2018, approximately a month before he was detained, Rathod unilaterally sent $70,000 from another of his businesses, Advanced Business Management Services, LLC, to New Vision. Rathod's failure to disclose New Vision during the presentence investigation, and the resulting omission of New Vision's assets from the PSR, support the application of the enhancement.

### 3. Denial of an Acceptance-of-Responsibility Reduction

Because we conclude Rathod's conduct justified an obstruction-of-justice enhancement, we affirm the district court's denial of a reduction for acceptance of responsibility. Application Note 4 to U.S.S.G. § 3E1.1 explains that "[c]onduct resulting in an enhancement under § 3C1.1 [for obstruction of justice] . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." And Rathod makes no attempt to argue that this is an "extraordinary case[] in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." *Id.*

### C. Role Enhancement

Rathod next argues that the district court erred in imposing a four-level enhancement for his role in the offense. A four-level enhancement applies under § 3B1.1 where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The Guidelines define a participant as a "person who is criminally responsible for the commission of the offense, but [who] need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1. The "guideline offers no further definition of 'participant' or what it means to be 'criminally responsible,' but cases applying the guideline uniformly count as participants persons who were (i) aware of the criminal objective, and (ii) knowingly offered their assistance." *United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002). We review the district court's application of this enhancement de novo. *Id.*

The government argued at sentencing that there were five participants: Rathod, Mrs. Rathod, Dr. MacAuley, Jackie Patel, and Wavy Curtis Shain. Rathod's counsel conceded that the government could demonstrate that the first three qualified as participants. We conclude that Patel and Shain also qualify as participants and that the four-level enhancement was appropriate.

The district court remarked at sentencing that Jackie Patel's "extensive involvement. . . was so integral to the schemes that Mr. [Rathod] was carrying out that one could I think circumstantially infer her criminal involvement in this case." R. 106, PID 793-94. In support of this conclusion, the government cites extensive record evidence demonstrating Patel's knowing involvement in Rathod's scheme, including "her knowledge that Rathod was using different aliases (including identifying himself as her godfather) [to patients], her knowledge that Rathod wanted to avoid any associations with his last federal case, her willingness to nonetheless serve as a straw owner (including by purchasing EZ Sleep at Rathod's direction, with funds Rathod provided, on behalf of a shell holding company), or her willingness to act, for years, as the nominal manager of AMS, SDM, and EZ Sleep, subject to Rathod's ultimate authority." Gov't Br. at 36. We agree that such evidence implies Patel's knowledge of Rathod's criminal activity and qualifies her as a participant.

As for Wavy Curtis Shain, the government's evidence demonstrated that Rathod directed Shain to organize AMS, that Shain did so and then sent the charter documents to "Dr. Ahir," one of Rathod's aliases, and that Shain was aware of Rathod's fraud because Shain was cc'ed on loan applications for AMS where Rathod listed Shain as the landlord. This evidence establishes Shain's knowledge of Rathod's criminal activity and active participation in it.

Moreover, even if we were to conclude that Patel and Shain did not qualify as participants, we nevertheless agree with the district court that Rathod's crime qualifies as "otherwise extensive"

because it was the "functional equivalent of a crime involving five or more participants." *Anthony*, 280 F.3d at 699. In addition to the aforementioned individuals, Rathod directed several other unknowing participants, including Dr. Agha and Chandu Patel, and their actions aided Rathod's criminal objective by allowing Rathod to conceal his ownership of at least two healthcare companies and evade his 20-year exclusion from working with companies that bill Medicare or Medicaid. Therefore, the district court properly applied the four-level role enhancement.

## D. Reasonableness of the Sentence

Rathod additionally contends that the district court's sentence on the new criminal charges was "procedurally and substantively unreasonable" because "the statutory maximum sentence was imposed without regard to the sentencing guidelines." Appellant Br. at 38. Rathod argues that because the district court stated unambiguously that it "would sentence this case exactly the same way even if [it] had granted [Rathod's] objections and we were looking at lower guideline ranges," R. 106, PID 827-28, it would have imposed the statutory maximum sentence regardless of what the Guideline range was. The problem, Rathod contends, is that had all of his objections been sustained, his offense level would have been reduced from 30 to 21, which, when combined with his criminal-history category of III, would have resulted in a Guideline range of 46-57 months, making a sentence of 120 months harder to justify.

Rathod's argument that his Guideline-range sentence is procedurally and substantively unreasonable because the range *could* have been much lower misses the mark. Procedural and substantive reasonableness review concerns the reasonableness of the sentence actually imposed. Rathod's actual sentence is procedurally reasonable because the district court entertained oral argument on the disputed Guideline enhancements, confirmed with Rathod's counsel that the Guideline range had been calculated correctly, given the court rulings, discussed the 18 U.S.C. §

3553(a) factors, and listened to Rathod's allocution before explaining why a Guideline sentence was appropriate. *United States v. Hammadi*, 737 F.3d 1043, 1047 (6th Cir. 2013).

The sentence is also substantively reasonable. A sentence that is within the properly calculated Guidelines range is "afforded a rebuttable presumption of reasonableness on appeal." *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008). The district court adequately explained the basis of its conclusion that this case "stands out like a sore thumb as really needing the utmost sentence" for several reasons: This was Rathod's third conviction for similar fraudulent conduct, Rathod almost immediately reoffended upon being released from prison, and his scheme was so extensive and elaborate that the district court was "almost without words in describing the seriousness of this offense." R. 106, PID 825. The district court did not abuse its discretion in sentencing Rathod on the new criminal charges.

### E. Consecutive Revocation Sentence

Finally, Rathod contends that the district court erred in imposing a consecutive sentence for Rathod's supervised-release violations. We review this decision for an abuse of discretion. *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008). In deciding whether to exercise its discretion to run a revocation sentence consecutively or concurrently, a district court must consider the 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C. § 3584(b). And we require the court to "indicate on the record its rationale, either expressly or by reference to a discussion of relevant considerations contained elsewhere." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012).

Rathod argues that although the district court analyzed some of the relevant factors, "it did not discuss any of these factors in connection with running that sentence consecutively." Appellant Br. at 41. We disagree.

15

In explaining why a consecutive sentence was appropriate, the district court explained that "when you look at these violations they are so in your face really . . . and so immediate, and so similar to what happened before, that I think they really do justify consecutive sentencing. I think we should recognize that supervised release should have some integrity also." R. 588, PID 4633-34. These statements followed shortly after the district court explained why the 18 U.S.C. § 3553(a) factors justified the harshest sentence possible. The court appropriately referred back to its earlier explanations that "the offenses . . . mirror the conduct which led to the guilty pleas in the underlying case"; that they are "exactly the same or very nearly exactly the same as the offense which he committed back in 2012, and an earlier offense in state court which he committed I believe around 2003"; and that "clearly supervised release did not address his characteristics because he violated almost as soon as he got out." *Id.* at PID 4632-34. Thus, the district court adequately explained its conclusion that Rathod's conduct warranted a severe sentence. That is all that our cases require. *See, e.g.*, *United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009) (concluding that the district court must only make "generally clear the rationale under which it has imposed the consecutive sentence"); *United States v. Massey*, 758 F. App'x 455, 468 (6th Cir. 2018) (affirming a consecutive supervised release sentence where the district court gave only a "brief" statement about the need for additional punishment).

For the foregoing reasons, we **AFFIRM**.